A. B. DAVIDSON v. M. D. ARLEDGE.

*Deed—Color of Title—City Lots.*

1. A deed is color of title only for the land designated and described in it.

2. A dispute as to the true location of a line separating two town lots must be determined by an interpretation of the descriptive words contained in the deeds.

3. If the words simply designate the lots by number, the boundary, as circumscribed by actual use and occupation, is the one meant by the bargainor. But where they refer to the lots not only by number, but "as known and designated in the plan" of the town, which plan contains a specific description thereof, it is the same as if that description were incorporated in the deed, and the latter must prevail; and it is incompetent to show by parol that the boundaries were intended to be different.

4. Whether a dividing line between contiguous tracts can be changed by recognition and acts of ownership of the proprietors (?).

(*Reed* v. *Schenck*, 2 Dev., 415, cited and approved).

EJECTMENT tried at January Special Term, 1882, of MECK-LENBURG Superior Court, before *Bennett, J.*

Appeal by plaintiff.

*Messrs. Jones & Johnston*, for plaintiff.
*Messrs. Wilson & Son* and *Burwell & Walker*, for defendant.

SMITH, C. J.　The controversy in this cause is as to the proper location of the boundary line between two adjacent lots, one of which belongs to the plaintiff, the other to the defendant.

In the original laying off and plan of the town, now the city of Charlotte, a square bounded by Second, Tryon, Third and College streets, and embracing both lots, known as square number ten, was divided into equal parts by a line extending from Third to Second street, bisecting the boundary of the square on those streets, and made the rear line of the lots fronting on Tryon and College streets. These lines extending across the square from Tryon to College streets at points equally distant one from the other, and forming right angles at their intersection with the rear line first mentioned, divided the entire square into eight lots, four fronting on Tryon and the same number fronting on College street, each of the width of ninety-nine feet and of the depth of one hundred and ninety-eight feet.

These four lots fronting on Tryon street, counting from Third to Second street, were numbered successively 69, 70, 71 and 72; while those on College street, enumerated in the same direction, were designated as 77, 78, 79 and 80.

A divisional line running from a point on Tryon street, equally distant from the corners of the square on that street to a point on College street, also equally distant from the corners of the square on that street, will terminate on College street at the place contended for by the plaintiff, and put the disputed territory within the limits of lot 78, owned by him.

The defendant claims that the dividing line, whatever may have been its original location, is formed by running from the admitted starting point on Tryon street, and terminating on College street, eighteen feet northeast from the terminus claimed by the plaintiff, as represented by dotted lines in the diagram.

The plaintiff deduces his title through an unbroken series of deeds, commencing with a deed executed by Henry Eustace McCulloch to the commissioners of Charlotte in 1767, and extending down to the deed executed by Daniel Asbury to William E. White in 1858, in all of which, except the first, the land is described as lots Nos. 69, 70, 77 and 78.

The plaintiff then introduced the will of W. E. White conferring an authority upon his executor to sell, and a deed of conveyance from the executor to himself on May 22d, 1869, describing the lots as being in the city of Charlotte in these words: "The following lots in said city, and known and designated on the plan thereof as numbers sixty-nine (69), seventy-seven (77), seventy (70), and seventy-eight (78), in square number 10, lying on Tryon street and College street, being the property on which said testator lived at his death." These lots, as shown in the diagram, constitute the area of the square lying on the northeast of the central dividing line from Tryon to College street, the true position of which forms the subject of dispute.

The defendant derives his title from the deed of Joseph H. Wilson, administrator of one R. E. Carson, a former owner,

bearing date May 3d, 1861, for lots number 79 and 80, being the two fronting on College street, and nearest to Second street, forming one-fourth part of the square, to William E. White, and a deed from the executor made to the defendant on June 14th, 1870, in which the land is described as "that portion of lots number 79 and 80 fronting on College street and running back 80 feet to the line of the dower of Mrs. Carson; thence with said dower line to the line of the lots of A. B. Davidson; thence with his line 80 feet to College street; thence with College street 198 feet to the beginning."

It was shown that, upon measurement from the intersection of Third and College streets, as Third street was first laid out, and disregarding its subsequent widening, the distance to the point where the black dividing line meets College street is one hundred and ninety-eight feet, while to the point where the dotted line is met the distance is one hundred and eighty feet—the difference being eighteen feet, the length of the base line of the portion in contest.

In like manner, measuring on College street from the corner of the defendant's lot on Second street, the distance thence to the point marked 4, where the black line meets College street, is one hundred and ninety-four feet, while if extended to the dotted line at three it is two hundred and twelve feet.

From these measurements it is manifest, and the contrary does not seem to have been pressed, that according to the first formation of the boundaries of the lot, as the city was laid out, the disputed area is entirely within the lines of lot 78, and if the controversy is to be decided according to their primary location, the plaintiff is entitled to recover.

But it was in evidence that the dotted line between Tryon and College streets has been recognized as the division line between the adjoining lots by their former proprietors, and possession held and acts of ownership exercised on either side up to it for a period of more than thirty years, without interruption, until the title to both on College street vested in the testator, W. E.

42

White, under the respective deeds of Daniel Asbury in 1858, and of Wilson, administrator, in 1861, when he became the owner of the land on either side of the line in controversy, and the adversary occupation ceased.

The long possession thus shown, with unquestioning acquiescence on the part of preceding proprietors of the plaintiff's lots, not only raises a presumption of a prior grant from the state, as charged by the court, but of a conveyance from one proprietor to the other, so as to make such the true line separating the adjacent lots.

But when the testator became the owner of both adjacent lots, the line could be obliterated, however well established before, by him or his authorized executor, in any conveyances either might thereafter choose to make to different purchasers. The first of the subsequent deeds, executed by the executor of White, is to the plaintiff; and as that made a year later to the defendant calls for and recognizes the plaintiff's line along which it runs to College street, it is obvious the solution of the controversy is to be found in putting a construction upon the descriptive words contained in the prior deed of the plaintiff, and ascertaining to what land they are to be fitted.

If these words of description simply designated the lots by number, it might be urged with much force that the boundary, as circumscribed by actual use and occupation extending back over so long an interval of time, was that meant by the bargainor, the lot retaining its name by number, although of diminished area.

But this reasoning is not sustained by the descriptive language of the deed. The lots are not only referred to by number, "*but as known* and designated in the plan thereof," that is, with the same boundaries which located and defined them in the first or original plotting and laying off of the town.

This interpretation seems to be required to give operation and scope to the language employed in designating the subject matter of the deed; and this, the authorized representative of the

owner of both, was at full liberty to do. He has chosen to go
back in parcelling out the land, and re-instate the original boun-
daries between different purchasers, and this expressed intent
must prevail over all inferences to be drawn from the acts and
recognitions of preceding owners.

The construction of the plaintiff's deed was a question of law,
and it was the duty of the judge to declare *what were the boun-
daries* called for in the deed, and to leave the jury to ascertain
*where they were.*

We do not see how the defendant's deed could be color of title
so as to encroach upon the plaintiff's land, when its line stops at
the plaintiff's boundary and follows it to College street. A
deed is color only for what land is designated and described in
it, and there can be no overlapping effect ascribed to it to divest
or impair the title to land which it merely touches. Indeed
there is no contest between the parties as to the ownership of
these respective lots, but as to the true location of the line that
separates them, and this must be determined by putting an inter-
pretation upon the descriptive language contained in the plain-
tiff's deed to which that of the defendant conforms.

We have not, in this view, considered the able and instructive
argument, apparently supported by numerous cited cases for the
proposition that a dividing line between contiguous tracts can be
changed by recognition of the respective proprietors, accompa-
nied by acts of ownership and possession on either side, short of
the period which raises the presumption of a conveyance con-
sistent with the possession, for the point is not material in decid-
ing the present controversy. If it were, we should be reluctant
to follow those adjudicated cases, and give such force and effect
to a mere parol agreement so much at variance with the current
decisions in this state. They may be the offspring of the repu-
diated doctrine of part performance of a contract required by
the statute of frauds to be in writing, and proceed upon the idea
that as under these circumstances a court of equity will enforce,
so a court of law will recognize the long acquiescence in a parol

contract in regard to boundary of adjoining lands, as establishing rights and estopping parties from disputing it. Such are the reasons assigned in some of the cases for the ruling.

The correct rule which commends itself to our approval is laid down with great clearness by Chief-Justice HENDERSON in a case with features very much like our own, and in which it was proposed to prove the boundaries of a lot, described by course and distance in the deed, by showing where the lines were originally run and have been since recognized by corresponding acts of ownership.

He says, delivering the opinion of the court and referring to cases in which course and distance had been made to conform to actual boundary marks put up at the time, but not mentioned in the deed:

"Many of them never met the approbation of the profession, and for many years we have in all cases, I believe, except one, adhered to the description contained in the deed, and it is much to be lamented that we do not altogether." * * * "This," he continues—meaning the exception, " is going as far as prudence permits; for what passes the land not included by the description in the deed, but included by the marked line? Not the deed, for the description contained in the deed does not comprehend it. It passes therefore by parol or by mere presumption. As far as we know there has been no series of decisions by which the description in the deed is varied by marks, unless they were made for the *termini* of the land described in the deed, or supposed to be so made, and to which it was intended the deed should refer; or to which it was supposed the deed did refer, or rather supposed that the courses and distances corresponded with the marks, and that the same land was described, whether by course and distance in the deed or by the marked line." *Reed* v. *Schenck*, 2 Dev., 415.

Adhering to the rule that we must look into the instrument itself to ascertain what is meant to be conveyed, and using parol evidence to fit the description to the thing described, the conclu-

sion is unavoidable; and so the jury should have been charged, that the plaintiff's deed embraces the lots as originally laid out, and the province of the jury was simply to ascertain where those lines were, and whether they take in the disputed part.

For the error pointed out, the verdict must be set aside and a new jury ordered, and it is so adjudged.

Error. ·                                      *Venire de novo.*