D. B. BATTS v: H. L. STATON.

. (Decided October 25th, 1898.)·

*Boundary. Parol Evidence of—Deeds—Declarations of Deceased Persons.*

1. Where partition has been made by decree of the Court between two tenants in common of a tract of land, neither will be estopped from setting up the original line of division between them, in consequence of a subsequent change in the line adopted by parol agreement.

2. Adverse possession for 20 years, uninterruptedly, would ripen the defective claim into a good title; and in such a case it would not be admissible to give in evidence the declaration of one of the deceased tenants, that he had only given permission to his brother to use the line agreed on, as a matter of favor, reserving the right of property in himself.

CIVIL ACTION for the recovery of land, tried before *Timberlake, J.,* at June Term, 1897, of EDGECOMBE Superior Court.

Both parties derived title from a common source, Benjamin Batts, who devised his land to his two sons, D. B. Batts and I. F. Batts, between whom it was divided by decree of the Superior Court in a proceeding for partition.

About a year after the decree, the two brothers, by parol, agreed upon a change in the dividing line. The plaintiff instituted this suit in order to re-establish the original dividing line.

There was a verdict and judgment in favor of plaintiff, and appeal by defendant.

The points made are considered in the opinion.

*Mr. H. G. Connor,* for appellant.
*Messrs. Gilliam & Gilliam,* for appellee.

MONTGOMERY, J.: Partition by decree of the Superior Court of Edgecombe was made of a tract of land in that county, in 1870, among the devisees of Benjamin Batts. The shares of Isaac and D. B. Batts were coterminous and the line between them was described in the survey made at the time of partition as running from a bunch of birches, near Bryan's old mill, South 70½ West to an oak on the road, being represented on the map used in the trial by the line running from A to B. The plaintiff, who is the son of D. B. Batts, is the owner of (two-thirds undivided interest) the share allotted to his deceased father, and the defendant is the owner of the share which was allotted to Isaac by purchase from the son and only heir at law of Isaac. The defendant is in possession also of a part of the share allotted to the plaintiff's father, lying just along and South of the line A B and between the lines represented by A D and E on the map.

This action was brought to recover the possession of that piece of land lying between A D and E. The defendant in his answer admits that the commissioners, in their report in the partition proceedings, fixed the line between the two shares as the plaintiff has alleged in his complaint, but he avers that at the time of the filing of the report in 1870 Isaac and D. B. Batts made an agreed line which changed the line set out in the survey, by which Isaac, under whom the defendant claims obtained the land represented by the letters A D and E; that each took possession of his share under the changed line, and that adverse possession has been had of the same by the defendant and those under whom he claims since that time up to the commencement of this action—a period of about 25 years.

The defendant introduced several witnesses, who tes-

tified on the matter of the changing of the line between
Isaac and D. B. Batts, all of whom testified, however,
that the agreement was made after the partition was
completed. Henry Batts said that "Doctor D. B. Batts
and his brother had some difference about the dividing
line fixed by the division, but after a while they came
upon an arrangement so as to give Isaac a way over the
creek." Frank Batts testified that "some time after the
division was made Dr. Batts told me to catch my horse
and get some sticks. He wanted me to run the furrow
from the white oak to the gum bush on the path.
Isaac was there. I ran to the gum bush where it
strikes the path. The fence was run on the furrow.
The fence went down after the stock law was passed.
The ditch on Dr. Batts' side goes to the line and stops.
Dr. Batts had the ditch cut. I was there from the time
the land was divided until two years ago. The hedge-row
was always recognized as the line by Dr. Batts and his
brother after the agreement." G. L. Lilly testified that
"I was on the land when it was divided; after that, Dr.
Batts and his brother made an agreed line between
them, which began at the white oak on the road and
ran with the fence until it struck the path, and then
with the path until it struck the creek. Dr. Batts
told me the change was made to give his brother an
outlet to the creek; this line was made the year after
the division. It was recognized as a line for the ten or
eleven years I remained there."

His Honor refused to give at the defendant's request
an instruction which was in the following words: "If
the jury find that D. B. Batts and Isaac Batts made an
agreement as to the location of the dividing line be-
tween their land in 1870 and made an agreed line and
placed a fence upon said agreed line, and so recognized

the line during their joint lives and during the life of the survivor, D. B. Batts, till his death in 1885, and said land was recognized by their heirs and assigns until 1896, the plaintiff, the heir of D. B. Batts, is estopped from disturbing the line which was established by his father, D. B. Batts."

There was no error in his Honor's refusal to give this instruction. By all the evidence bearing on that question it appeared, as we have said, that the changed line was made after the survey and partition. But, if the change had been made contemporaneously with the survey and running of the line in the partition proceedings, the plaintiff would not be estopped from setting up the original line. In no case will the description contained in a deed be set aside by parol evidence, except where the deed describes the land by *distance and course only*, and old marks are made to appear corresponding in age with the time of the execution of the deed so nearly within the courses and distances that they may reasonably be supposed to have been made for the boundaries. *Reed* v. *Schenck*, 13 N. C., 415; *Carraway* v. *Chancy*, 51 N. C., 361; *Davidson* v. *Arledge*, 88 N. C., 326; *Shaffer* v. *Hahn*, 111 N. C., 1. In the first cited case the Court said: "And for many years we have in all cases, I believe, except one, adhered to the description contained in the deed; and it is much to be lamented that we do not altogether. The case to which I allude is where the deed describes the land by course and distance only, and old marks are found, corresponding in age, as well as can be ascertained, with the date of the deed, and so nearly corresponding with the courses and distances that they may well be supposed to have been made for its boundaries, and marks shall be taken as the *terminii* of the land. This is going as far

as prudence permits; for what passes the land not included by the description in the deed but included by the marked *terminii* ?  Not the deed, for the description contained in the deed does not comprehend it.  It passes therefore, either by parol or by mere presumption.  As far as we know, there has been no series of decisions by which the description in the deed is varied by marks, unless they were made for the *terminii* of the land described in the deed, or supposed to be so made, and to which it was intended the deed should refer or to which it was supposed the deed did refer; or rather supposed that the courses and distances corresponded with the marks and that the same land was described, whether by course and distance in the deed or by the marked *terminii*."

But the defendant set up as a second defence that his claim, followed by 20 years adverse possession on the part of himself and those under whom he claims, had ripened into a title in fee to the land.  On that matter, J. M. Howell, a witness for the plaintiff, was permitted to testify over the objection of the defendant that "shortly before his death Dr. Batts said to me that he had entered into possession of his brother's (Isaac) land soon after his death as administrator and had so held possession for many years, and that thus being in possession of both sides of the disputed lines was the reason he had never taken the trouble to straighten the line."  This witness had already testified that Isaac died in 1872 and that Dr. Batts took possession of his land as administrator and so continued in posseseion until his death in 1885.  That part of the testimony of Howell, which referred to the declarations of Dr. Batts as to not straightening the line and his reason for not doing

123—4

so, ought not to have been received.   It carried with it the weight of Dr. Batts as a witness testifying to the fact that he had only given permission to his brother to use the line agreed upon as a matter of favor, reserving the right of property in himself.   This is apparent, and its importance is emphasized in the fact that in his charge his Honor said to the jury that one of the plaintiff's contentions was that the location of the line by consent was made by Dr. Batts simply for the convenience of his brother and not in any sense to affect the established line.   The effect of Howell's testimony in this vital point was to bring to the aid of the plaintiff the declaration of his deceased father, and that testimony must have had weight with the jury.

The defendant introduced no evidence on the defence set up in his amended answer, and it is needless to notice that part of the case.

For the error in receiving the evidence of Howell in the respect pointed out in this opinion, there must be a new trial.

New trial.