## McKENZIE v. HOUSTON.

### (Filed May 27, 1902.)

1. EVIDENCE — *Parol Evidence — Deeds — Descriptions — Plat — Courses—Distances.*

A grantor can not change by parol agreement a description of a lot in a deed about which there is no uncertainty, either in the deed or a plat referred to in the deed.

2. DEEDS—*Presumptions—Estoppel—Husband and Wife.*

Where a wife joins her husband in a deed, the presumption, if any, is that the title is a joint one, and not that she joined merely to release her dower and homestead.

DOUGLAS, J., dissenting.

ACTION by Ellie McKenzie against M. E. Houston, heard by Judge *Walter H. Neal* and a jury, at October Term, 1901, of the Superior Court of UNION County. From a judgment for the plaintiff, the defendant appealed.

*Redwine & Stack,* for the plaintiff.
*Adams & Jerome,* for the defendant.

MONTGOMERY, J. Some time prior to 1885 a survey and plot were made dividing a parcel of land into lots and streets which were afterwards embraced, or were then within, the town of Monroe. The plot was known as the "B. F. Houston plot," and B. F. Houston was the husband of the defendant. He and his wife retained lot No. 4. They conveyed, by deed, to the plaintiff lot No. 3, which lies just immediately north of lot No. 4, describing the lot by metes and bounds, as well as by courses and distances, the courses and distances being exactly as they appeared in the plot, and referring to it as "known as lot No. 3 of the plot of B. F. Houston." The plaintiff brought this action to recover a strip of a few inches lying along the entire southern line of lot No. 3, as described

in the plot, which strip she alleges the defendant is unlawfully
in the possession of.    The defendant knowing that she had
joined her husband in the conveyance to the plaintiff of lot
No. 3, and that she had conveyed it by metes and bounds, and
also by courses and distances mentioned on the plot, deemed it
prudent in her evasive answer to set up the matter which is
the real defense relied on by her against the plaintiff's action.
That defense is that at the time of the execution of the deed
the line between lots Nos. 3 and 4 was fixed and determined
by parol agreement by the parties to the deed, that that line
was a different one from the line in the survey and plot and in
the deed, and that the agreed line gave to the defendant the
title and possession to the strip in dispute.    The answer sets
up the defense in the following language:    "That she admits
that the plaintiff at one time owned a lot lying immediately
north of the lot now occupied by and in possession of the de-
fendant, with a dividing line distinctly known and marked by
a fence between plaintiff's lot and that of the defendant,
which said line was fixed and determined by the parties to the
deed executed to plaintiff, at the time of its execution."    That
we have properly interpreted the answer, is seen from a
perusal of the testimony of the defendant offered on the trial
and refused by his Honor.    She proposed to testify as fol-
lows:    "That she had been in the open, notorious and adverse
possession of the strip of land in dispute ever since 1849, un-
der a partition proceeding dividing the land inherited from
her grandfather, duly and regularly instituted, concluded and
recorded.    The lot or tract of land assigned and allotted to
her in said proceeding consisting of 30 1-4 acres, embracing
and covering the entire lot of the plaintiff; that said strip of
land in dispute has been cultivated as a part of her garden
ever since the execution of the deed from her to the plaintiff,
and for many years prior thereto; that at the time of the exe-
cution of the deed to the plaintiff, under which she claims the

land in dispute, it was agreed between the parties to said deed that the first line called for in said deed extended only to the corner of defendant's garden on Church street, and that the second line, running in a westerly direction, ran with the garden fence then standing, and running between the lots of the plaintiff and defendant, and that said fence still stands in the same place; that by mistake the first call in plaintiff's deed calls for 170 feet on Church street, instead of stopping at the corner of the garden; that said corner of the garden was marked by a stone permanently located; that the mistake in the deed making the first call was made by following the courses and distances in an old plot of town lots, made by B. F. Houston, but that it was agreed and understood between the parties of said deed, at the time of its execution, that the line of plaintiff's lot on Church street extended only from the intersection of Houston and Church streets to the corner of defendant's garden on Church street, and the corner of plain-tiff's lot on Church street, was, at the same time, definitely located at the corner of defendant's garden, and the line west from the corner of garden was definitely located and fixed to be and run with the garden fence then dividing the lots of plaintiff and defendant; that the lots sold plaintiff, at the time of the execution of the said deed, was entirely surrounded by a fence, and its boundaries were well known, and it was well understood and agreed that only the lot included by said fence was sold to plaintiff; that the corner of defendant's garden on Church street is an old and well-located corner, having been marked by a stone placed there more than twenty-five years ago; that the fence dividing the lots of plaintiff and defendant has been standing where it now stands, and where it was at the execution of the plaintiff's deed, for more than twenty-five years; that the defendant is not in possession of any of the lot north of the dividing fence between the lots of plaintiff and defendant."

His Honor refused to receive the evidence, and an exception to the ruling brings up the only substantial matter on the appeal for consideration.   The question for decision is not whether the first call in the deed "beginning at a stone, corner of Houston and Church streets and running thence S. 170 feet to a stone at the corner of the garden," should end at the stone or continue to the full distance of 170 feet.   If that was the point in the case we would be called on to decide whether a stone recognized and agreed upon at the time of the execution of the deed as a corner, in a city or town lot, would control course and distance as would a tree, rock, creek or other natural object in a rural section.   That might depend upon the size and texture of the stone, its depth in the earth, and the manner in which it had been planted; in other words, upon whether, upon consideration of the evidence, it was sufficient as to those matters for the Court to say as a matter of law that the stone was or was not a properly constituted and permanent landmark, a monument of description.   But the case before us is one in which the grantor undertakes to change, by parol agreement and evidence, a line about which there is no uncertainty either in the deed or in the survey and plot.   It will be seen from a reading of the rejected testimony of the defendant that she did not offer to show that the stone at the corner of her garden was pointed out or referred to and agreed upon by her and the plaintiff as the corner on Church street between lots 3 and 4; that there was no description of the stone as to its size, or its manner of erection; that, in fact, one of her witnesses, who was introduced to testify as to the corner, would have said, if his testimony had been received, that there was no stone at the time of the trial at the corner of the garden, it having been removed or covered by dirt so that it could not be seen.

But, besides, the fact that the description in the deed concludes with the further description, "and known as lot No. 3

of the plot of B. F. Houston," has the effect in law of fixing the line between the lots just as it was defined and located in the survey and plot. In the survey and plot only course and distance from an agreed beginning was used as a description, no mention of a stone at the corner of a garden on lot No. 4 having been made. The case is like that of *Davidson v. Arledge,* 88 N. C., 326. There, the former owners of two lots in Charlotte had verbally agreed upon a change in the dividing line, and had for years each used his separate lot under the terms of the agreement. Afterwards the plaintiff's grantor having become the owner of both lots conveyed to the plaintiffs, one of them, with a description taken from the plan of the town by number, and also "as designated in the plan thereof," and it was held that the same boundaries that were mentioned in the original laying off and plotting of the town were to locate and define the lot. The distance, then, in our case must control, and the word "stone," used in the deed, be regarded as imaginary only. The construction of the deed, then, being a question of law, his Honor was right in declaring to the jury *what were the* boundaries called for in the deed and instructing the jury that if they believed the evidence to answer the first and second issues "Yes," and the third issue, "That part on the southern boundary of lot No. 3, having a width of 1 6-10 feet on Church street, and 2 7-10 feet on Alley E, as shown by official plot."

The counsel of the defendant agreed in this Court that the defendant was not estopped to deny the plaintiff's title, for the reason, as he contended, that the deed to the plaintiff was made by B. F. Houston and wife (the defendant), and there was a presumption that the defendant joined in the deed only to release her dower and homestead, no title to the lot having been shown to be in her. The deed itself it would seem would be a sufficient answer to that argument, for, she joins with her husband in the words of conveyancing; she acknowledges the

joint receipt of the purchase-money, and she joins her husband in the covenant of warranty. If the doctrine of presumptions is to be invoked it would seem that the title was a joint one. It is not necessary to discuss the effect of the admission in evidence of the award, as from the view we have taken of the case it could not have been injurious to the defendant, even if the evidence was incompetent.

No error.

Douglas, J., dissenting. I can not concur in any phase of the opinion of the Court, either in its view of the law, its construction of the deed, or its conclusions of fact. It is evident, to my mind, that the defendant never intended to convey anything south of the garden fence. The deed specifically calls for a stone, *corner of B. F. Houston's garden*. Even if we take the stone as merely indicating a point, that point is expressly located by the deed itself at the "corner of B. F. Houston's garden." This was the corner of a marked line. I can not imagine how a line could be much better marked than by a fence, which was on the line at the time the deed was made, and has been there ever since. Let us take a plain, common-sense view of the matter: Two women go out to trade for a lot. They agree that the lot shall run 170 feet and shall stop at the corner of the garden. It turns out that 170 feet runs a foot beyond the garden fence. Which is more likely, that they should have made a mistake of one foot in the length of the line, or that they should be mistaken as to the location of the fence, which was in full view? The answer seems to me too plain for argument. They could see the fence, but could not see an imaginary point where a given number of feet would end. This is not an attempt to *change* by parol the description in the deed, but simply to locate the point called for by the deed, to-wit, the corner of the garden.

The Court says that "the grantor undertakes to change by parol agreement and evidence a line about which there is no

uncertainty, either in the deed or in the survey and plat." I can not see any such attempt whatsoever. It is true there is no *patent* ambiguity in the deed, because the deed assumes that the distance called for will stop at the corner of the garden. A *latent* ambiguity is developed because, in fact, the two points do not coincide. Hence, the question arises whether the grantor intended the line to stop at the garden fence or to continue the full 170 feet, no matter where it went. If we follow the settled rule of interpretation, it seems that we have no alternative but to stop at the corner of the garden, which was a well-known line of another lot then and now marked by a fence, which has never been changed. I have time but for few citations.

In the old and leading case of *Person v. Rountree,* 2 N. C., 378, note, repeatedly cited and approved, the course of the first line was "north" from a creek, so as to put the entire tract on the *north* side. The marked line ran south from the creek, so as to put the entire tract on the *south* side of the creek. It was held that the *marked* line controlled.

In *Cherry v. Slade,* 7 N. C., 82, it was held, quoting from the headnotes: "2. Whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in the patent or deed."

"3. When the lines or courses of an adjoining tract are called for in a deed or patent, the lines shall be extended to them, without regard to distance." *    *    *

"4. Where there are no natural boundaries called for, no marked trees or corners to be found, nor the places where they once stood ascertained and identified by evidence, or where no lines or courses of an adjoining tract are called for, in all such cases we are of necessity confined to the courses and distances described in the patent or deed; *for however fallacious such guides may be, there are none other left for the location."*

McKENZIE *v.* HOUSTON.

In *Houser v. Belton,* 32 N. C., 358, 51 Am. Dec., 391,. Judge Pearson gives the reason for the rule as follows: "Marked lines and corners control course and distance, because a mistake is less apt to be committed in reference to the former than the latter. Indeed the *latter* is considered as the most uncertain kind of description; for it is very easy to make a mistake in setting down the course and distance, when transcribing from the field book, or copying from the grant or some prior deed, or a mistake may occur in making the survey by losing a stick, as to distance or making a wrong entry as to course. For these reasons, when there is a discrepancy between course and distance and the other descriptions, the former is made to give way."

Does not this case settle that at bar? There is a discrepancy between the distance and the call for the corner of the garden,. which is in the marked and well-known line of another lot. Therefore, the distance must give way, and the line stop at the garden fence.

Two more citations and I am done:

In *Deaver v. Jones,* 119 N. C., 598, it is held by a unanimous Court that, quoting from the headnotes:

"1. When a grant is located by contemporaneously marked lines, those lines govern and control its boundary and fix the location so as to supersede other descriptions."

"2. Where there is conflicting testimony as to the true location of a corner forming a boundary of tract of land, *the highest evidence is proof of the consent of the parties* to the deed that certain marked lines or corners *should constitute the boundary,* and the identity of the corner is a question for the jury."

Again, it is said by a unanimous Court, in *Bowen v. Gaylord,* 122 N. C., 816, 820: "That an inconsistent course and distance must give way to a natural object or the well-known line of another tract when called for in the deed, was settled as far back as Taylor's Reports in *Witherspoon v. Blanks,* 1

N. C., 65 (157), and *Bustin v. Christie, Ibid.,* 68 (160). It would be useless to cite the long line of decisions to the same effect, ending in *Deaver v. Jones,* 119 N. C., 598."

In the case at bar the defendant offered to prove that at the time the deed was made, it was "agreed and understood between the parties to the said deed at the time of its execution that the line of plaintiff's lot on Church street extended only from the intersection of Houston and Church streets to the corner of defendant's garden on Church street, and the corner of plaintiff's lot on Church street was at the same time definitely located at the corner of defendant's garden, and the line west from the corner of the garden was definitely located and fixed to be, and run with the garden fence, then dividing the lots of plaintiff and defendant; that the lot sold to plaintiff at the time of the execution of said deed was entirely surrounded by a fence, and its boundaries were well known, and it was well understood and agreed that only the lot included by said fence was sold to plaintiff; that the corner of defendant's garden on Church street is an old and well-located corner, having been marked by a stone planted there more than twenty-five years ago; that the fence dividing the lots of plaintiff and defendant has been standing where it now stands, and where it was at the time of the execution of plaintiff's deed, for more than twenty-five years; that the defendant is not in possession of any of the lot north of the dividing fence between the lots of plaintiff and defendant."

This testimony should have been admitted under proper instructions from the Court, and in its exclusion I think there was error.

The case of *Davidson v. Arledge,* 88 N. C., 326, has no application to that at bar, because in Arledge's case the deed in question appears to have described the lots simply by reference to the plat and number, with no mention whatever of any marked line or adjoining tract. As there was nothing but the plat to go by, of course it controlled the description.