The plaintiffs sued for the recovery of a parcel of land in the city of Oxford 30 feet wide by 161 1-3 feet long, as shown on the map used at the trial in the court below, and in this Court at the hearing of the case.
It appears from the record that there was a sharp dispute between the parties as to the beginning corner of the larger lot, of which thelocus in quo is alleged by the defendant to be part. The deed under which the defendants claim describes it as being "at a (374) planted stone on Williamsboro Street about six feet southeast of a large red oak, the southeast corner, thence S. 59 W. 135 feet to a planted stone, thence N. 15 1/2 W. 161 1-3 feet to a planted stone, thence N. 59 E. 135 feet to a planted stone, thence S. 15 1/2 E. 161 1-3
feet to the beginning, containing one-half acre." The plaintiffs contended that this tract had for its beginning corner a point 6 feet from a standing red oak, but 11 feet from Williamsboro Street; while defendants claimed that it is where the deed described it to be, that is onthe street, near a red oak, the stump of which is there, and which they say was identified, and that if this is the true beginning corner, and the other calls of the deed are followed, the boundaries will include the land in dispute, while if the calls are run from the point *Page 398 
claimed by the plaintiffs to be the true beginning corner, the deeds of defendants do not embrace the said land. There was much evidence, pro andcon, as to whether the true beginning corner was at the one or the other place, for example, the surveyor testified that if the lines are run, as claimed by the plaintiffs, the first line cuts off seven feet of the prizehouse from its southeast corner, and runs through the center of its front, and the beginning corner will not be on the street, but eleven feet from it. There was no deed, and no evidence, to show that the beginning corner was so indisputably located as to exclude parol evidence of facts and circumstances to prove where it is, for there was fair ground for controversy as to where it is, under the rule that what is a corner or line is a question of law, and where it is a question of fact.
The defendants, in this state of the evidence, proposed to prove that from 1883 until his death in 1911, J. M. Currin, under whom they claimed, and, since that time to the commencement of this action, the defendants used the land in dispute, fenced it, built a stable on it, and cut down, removed and converted to their own use several large oak trees then standing upon it; that this was done near the front door of the Taylor residence, and in full view of the Taylors, and that they made no objection, nor did they protest against the same. This evidence was, at first, admitted, and afterwards, at plaintiffs' request, stricken out, and defendants excepted.
There was a verdict for the plaintiffs and judgment thereon, from which this appeal was taken by the defendants.
after stating the case: We think it was competent for the defendants to show that they held possession of the disputed land for many years, without objection from the Taylors, and, for (375) this purpose, to prove the facts and circumstances in regard to building the fence on the land, erecting a stable thereon, cutting down trees, valuable for shade, firewood, and so forth, and converting the same to their own use. There was fair ground for dispute as to the location of the beginning corner of the lot conveyed by the Taylor-Biggs-Currin deed, and, Where is that corner? is the principal question in the case, and it is not like the one decided in Davidson v.Arledge, 88 N.C. 326; S. c., 97 N.C. 172. There the dividing line between two tracts was so fixed by the reference to city map, and with such certainty and definiteness that the evidence of a possession indicating a different line was held to be inadmissible, because it tended to *Page 399 
contradict the deed, and the only question was, Where were the lots designated on the city map "as Nos. 69, 70, 77, and 78, in Square No. 10, lying on Tryon and College Streets, and being the property on which said testator lived at the time of his death?" The difference in their legal aspects between that case and this one will appear from two of the headnotes, as follows:
"1. If the words simply designate the lots by number, the boundary, as circumscribed by actual use and occupation, is the one meant by the bargainor. But where they refer to the lots not only by number, but `as known and designated in the plan' of the town, which plan contains a specific description thereof, it is the same as if that description were incorporated in the deed, and the latter must prevail; and it is incompetent to show by parol that the boundaries were intended to be different." Davidson v. Arledge, 88 N.C. 326.
"2. Where there is a dispute as to the dividing line between two adjoining tracts, the acts and admissions of the adjoining proprietors recognizing one line as the true one, are evidence of its location when the line is unfixed and uncertain, but where it is well ascertained such acts and admissions are not competent evidence either to change the line or to estop the party from setting up the true line." Davidson v. Arledge,97 N.C. 172.
That is not precisely our case, for there is nothing in the deed of Biggs to Currin, that so certainly designates this lot as to exclude parol evidence, but, in one respect, the cases are alike, for it was the duty of the judge to tell the jury what, in law, are the corners and lines of the deed, and for the jury to decide where they are. He would say to them that the beginning corner of the lot is that described in the deed, viz., "At a planted stone on Williamsboro Street, about six feet southeast from a large red oak," and that wherever they found this corner to be, whether at red A, as designated on the map, or at A, would be, in law, the beginning corner. But this requires the jury to pass upon the important question of fact as to where is this corner, designated as the beginning; and in doing so, they must consider the deeds and any relevant facts or circumstances which will enable them (376) to make discovery of the true corner, after searching for it in the light of the evidence. Where is the point described in the deed as on the street about six feet southeast of the big red oak, was purely a question of fact, and in solving it the jury had the right to inquire whether the stump was that of the red oak mentioned in the deed, and if so, to consider the distance and direction from it to the corner as claimed by the defendants, and also to consider the fact that the deed fixes the corner on the street and not away from the street, and also what was said about the stone and the post, and the fence and *Page 400 
trees; the building of the stable, and the fact as testified by the surveyor, that the line as claimed by the plaintiffs would cut off one end of the prize-house to the depth of seven feet and pass through the middle of the front of that house. Why are these not pertinent facts? They could also consider the declaration of any of the plaintiffs as to the true line, which was against his interest. Roe v. Journegan, at this term. This would not be changing a fixed and ascertained line, but merely determining by proof where the line is, if its true location is disputed, as it is here.
We said at the last term, in Wiggins v. Rogers, 94 S.E. 685: "Plaintiff proposed to show that the line had been run some years before the time of the trial by Posey Hyde, and that the respective owners had recognized it as the line of division between them for many years. This evidence was excluded by the court, but we think it was competent, not to change the boundaries of the land (Davidson v. Arledge, 97 N.C. 172; S. c.,88 N.C. 326), or, in other words, to show that the parties had orally agreed upon a line different from the true line, but as some evidence to prove where was the true line. Haddock v. Leary, 148 N.C. 378; Barfield v.Hill, 163 N.C. 262, 267. It was also relevant to show character and extent of the possession of the parties. Following this rule, as stated in these cases, we must hold that there was error in excluding the evidence. We do not think the evidence was irrelevant, as claimed by the defendant. It may not prove very much, but it proves something which the jury should consider in this very close question as to boundary. The conduct of the parties with respect to a certain line, as being the dividing line between their lands, is surely some proof of its true location."
It was held in Barfield v. Hill, 163 N.C. 262: "Evidence that a certain boundary line in dispute in an action to recover lands had been surveyed by one under whom the plaintiff deraigned his title, and that those claiming under him had never thereafter claimed beyond this line, is competent evidence in behalf of the defendant, when it tends to establish his claim," citing Haddock v. Leary, 148 N.C. 379.
(377) The building of a fence and house on the land, and the other acts of which proof was offered, were trespasses and likely to meet with strenuous objection from any one claiming to own the land, but not so if defendants had the right to so use the land.
If it was settled where the lines are, no one of them could be changed by mere parol evidence, and not even by an oral agreement or understanding, but here the location of the line is in doubt, and the object is to find out where the line is, and oral evidence of the acts and conduct of the parties is admissible. Haddock v. Leary, supra. *Page 401 
In Hanstein v. Ferrell, 149 N.C. 240, evidence of a nature similar to that in this case, though not as strong, was held to be competent for the purpose of determining where a divisional line was, and the Court said: "We are of opinion that this is proper evidence to be submitted to the jury on the question of location, tending, as it does, to show, on the part of the owners and occupants of these lots, recognition of this adopted line and acquiescence in it as the true divisional line between them. The doctrine by which this testimony is held to be relevant to the inquiry is thus stated in 5 Cyc., p. 940: `Recognition of and acquiescence in a line as the true boundary line of one's land, not induced by mistake, and continued through a considerable period of time, affords strong, if not conclusive, evidence that the line so recognized is the true line.' And, while such recognition and acquiescence may not, as a rule, justify a departure from the true dividing line when otherwise clearly defined and established, the authorities cited fully justify this statement of the doctrine as applied to the facts presented on this appeal." Citing Davidson v. Arledge,97 N.C. 172; M. E. Society v. Akers, 167 Mass. 560. It seems to us that theHanstein case is decisive of the question we are discussing.
Plaintiff's counsel have called our attention to certain evidence in regard to the width of this lot on the street, and the location of an alley ten feet wide in the rear, and also to their contention that Currin had sold all of his land except the Prize-House lot, as showing conclusively that the lot in question could not be located as contended by the defendants, as it would be much wider than represented on the map (168 feet instead of 135 feet). But these are all matters for the jury to consider. The defendants say that the map shows that if you start at "A prime," which they contend is the true beginning corner and run with the calls of their deed, the lot will be 135 feet wide and embrace the land in dispute.
The defendants state in their brief: "If all the testimony as to the location of the fence and the rock at its end and the 35 years acquiescence by the Taylor family in the cutting of trees, building of stables, fencing the 30 feet of land, was admissible, and the deed, fence, and rock, his Honor left in the record, then the corner on the (378)street 61 feet southeast of the prize-house was 30 feet east of the corner of the lot Taylor conveyed to Biggs and Biggs to Currin." This shows their contention. This is not a conclusive case for the Taylors, as argued for the plaintiffs, but is one for the jury, and the learned judge so regarded it, as will appear from his charge. The evidence leaves the issue as to title and right of possession in grave doubt, and this doubt must be settled by the jury. *Page 402 
The defendants excepted to this instruction: "If, however, you shall find by the greater weight of the evidence that this land in controversy is included within the boundaries of the land conveyed to Mrs. Taylor by Mr. Crews, then you should answer the issue `Yes,' and in that event you need not further consider the claim of the other parties plaintiff." His Honor afterwards charged as to the defendants' contention and instructed the jury how to answer the issues if they found that the line is where the defendants contend it is, but the instruction to which this exception was taken and quoted above, considered by itself, and without proper reference to the defendant's contention, and their finding as to it, was calculated to mislead the jury, as it was not then properly qualified, and the other instruction was so widely separated from it. But we do not find it necessary to consider whether we should grant a new trial on this account, as the error already explained is sufficient for that purpose.
We conclude that there was error in rejecting evidence.
New trial.
Cited: Sc., 182 N.C. 266; Sc., 186 N.C. 353; Woodard v. Harrell,191 N.C. 198; Power Co. v. Taylor, 194 N.C. 233; Daniel v. Power Co.,204 N.C. 278.
(379)