# BLOCK *v.* RYAN.

REAL ESTATE BROKERS; COMMISSIONS; TITLE; CONTRACTS FOR
SALE OF LAND.

1. A real estate broker has the right to presume that the title to real estate placed with him to sell, is good, and if a sale made by him fails of completion because of the want of a good title, he is entitled to his commissions.

2. But a good title is not necessarily a perfect record title ; and in a suit brought by the broker under such circumstances against the owner to recover commissions, it is not sufficient that he show that the title was unmarketable, but he must show that it was actually not a good, indefeasible title.

3. When a contract made by a broker with an intending purchaser of land, and ratified by the owner, gives the purchaser the option to settle in accordance with the terms of sale within 30 days or forfeit the deposit made by him, the broker cannot be said to have found a purchaser until the option shall have been exercised and the purchase completed.

No. 313. Submitted October 4, 1894. Decided October 12, 1894.

HEARING on a bill of exceptions taken by the plaintiff in an action of *assumpsit. Judgment affirmed.*

The FACTS are sufficiently stated in the opinion.

*Mr. Charles Cowles Tucker* for the plaintiff in error :

1. If a real estate agent procures a person ready, willing and financially able to make the purchase absolutely, on the terms fixed by the principal, and the latter accepts the proposed buyer, and enters into a contract with him respecting the sale and purchase of the property, he establishes a *prima facie* right to his commissions. *Lemon* v. *Lloyd,* 46 Mo. App. 452 ; *Greene* v. *Hollingshead,* 40 Ill. App. 195, and cases cited. See also *Jones* v. *Holladay,* 2 App., D. C. 279. Where the agent has produced to his prin cipal an acceptable person, and the price and terms have been agreed upon, the agent's right to compensation will not be impaired by the subsequent inability or unwilling- ness of the owner to consummate the sale at the price

and upon the terms prescribed. *Jones* v. *Stevens* (Neb.), 55 N. W. 251. If the failure to complete the sale is caused by the refusal of the vendor, and through no fault on the part on the agent, the broker has earned his commission. *Kock* v. *Emmerling*, 22 How. 69; *McGavock* v. *Woodlief*, 20 How. 221; *Ryon* v. *McGee*, 2 Mackey, 17; *Niederlander* v. *Starr*, 50 Kan. 770; *Woodall* v. *Foster* (Tenn.), 18 S. W. 241; *Barnard* v. *Monnot*, 42 N. Y. (3 Keyes), 203; Fitch on Real Estate Agency, 113. If the sale fails of consummation because of a defect in the title of the property, and there has been no fault or neglect on the part of the broker, he has earned his commission. *Cheatham* v. *Yarbrough*, 90 Tenn. 77; *Gonzales* v. *Broad*, 57 Cal. 224; *Green* v. *Lucas*, 33 L. T. (N. S.), cited in 88 Ind. 104; *Knapp* v. *Wallace*, 41 N. Y. 477; *Glentworth* v. *Luther*, 21 Barb, 145; *Doty* v. *Miller*, 43 Barb. 529; *Holly* v. *Gosling*, 3 E. D. Smith, 262. In other words, when the sale is not completed because of the refusal, failure, neglect or default of the vendor, the broker has earned his commission. To the contrary, where the default is on the part of the vendee, or proposed purchaser, who has been procured and submitted as a buyer by the broker to his principal. *McGavock* v. *Woodlief, supra; Kimberly* v. *Henderson*, 29 Md. 512.

*Mr. Henry E. Davis* for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an action to recover $300 under a contract for that sum for finding a purchaser for a lot which the defendant, James P. Ryon, wished to sell. Upon the close of plaintiff's evidence the court directed a verdict for the defendant. Plaintiff Sigmund J. Block, proved that he was a real estate broker; that defendant requested him to find a purchaser for his lot and promised him $300 in case he did so, and that he accepted the offer and found a purchaser at defendant's price and terms. On May 27, 1892,

he entered into a written contract with the purchaser, one William Warren, wherein it was stated that $100 had been received of Warren to be applied on the purchase of the lot which was properly described, upon the terms set forth. The contract contained the following recitals: "*Title to be good* or money refunded; sale made subject to confirmation. . . . The purchaser is required to make full settlement in accordance with the terms of sale within thirty days of this date, *or the above deposit will be forfeited.*" This contract was signed by both Warren and the plaintiff, as agent, and confirmed by the defendant. Warren employed the Columbia Title Company to examine the title, and its report was, that "while the defendant's title to said real estate was good as a possessory title, it was imperfect on the record, and to be made perfect on the record required a quit claim deed from one J. H. Walter." It was proved that "the title of the defendant was unmarketable until the existing defect was cured in the manner described."

It appears that Warren was able and ready to complete the purchase, but demanded that the aforesaid quit claim deed be first procured and the title be made "perfect of record."

Defendant offered to procure the quit claim deed required provided that Warren would increase the stipulated cash payment of $825 by such sum as Walter demanded therefor, and deduct the same amount from the deferred payment of $13,000. This proposition was declined and the negotiation ended. It appears also that before offering the lot for sale defendant knew of the condition of his title as it appeared of record, and was then under a contract with said Walter for his quit claim. He did not tell plaintiff of this, however, and he remained in ignorance of the fact until the report of the title company was made. Plaintiff made demand for the payment of his commission, which was refused, before his suit was begun.

Upon these facts, as shown in the bill of exceptions, the

question arises: Did the court err in ordering the jury to return a verdict for the defendant?

As a general proposition it is well settled that a broker is entitled to his commission when he shall have procured a purchaser who is in a situation and ready and willing to complete the purchase on the terms proposed by the seller, and his right is not affected by the refusal of the seller to go on and perfect the sale. *McGavock* v. *Woodlief,* 20 How. 221; *Kock* v. *Emmerling,* 22 How. 69; *Bryan* v. *Abert,* 3 App., D. C. 180.

The difficulty in this case is in the application of this principle to the facts shown in the record. We think it just to say that in general an owner of land who offers it for sale should be presumed to know the condition of his title. It is hardly to be supposed—especially in this time of critical examinations of titles—that an owner will undertake to sell land for a full price when his title is known to be bad. Therefore, when the plaintiff was requested to find a purchaser for the defendant's lot, we think he had the right to presume that the title was good, and was not called upon to examine or even make inquiry concerning it. This is not a case where the owner was himself ignorant of the true condition of his title, for it is shown by the evidence that he knew of the Walter claim and had been in treaty with him for a quit claim thereof. Notwithstanding this, he gave plaintiff no information on the subject, and no chance to decide whether he would undertake the trouble to find a purchaser under such circumstances. If it were clear that the sale only failed of completion because the defendant's title was not good, in the legal sense, we should hardly hesitate to say that he ought to recover the contract price of his services. This doctrine seems just and reasonable, and has the sanction of high authority. *Cheatham* v. *Yarbrough,* 90 Tenn. 77; *Gonzales* v. *Broad,* 57 Cal. 224; *Knapp* v. *Wallace,* 41 N. Y. 477; *Holly* v. *Gosling,* 3 E. D.

Smith, 262 ; *Glentworth* v. *Luther*, 21 Barb. 145 ; *Doty* v. *Miller*, 43 Barb. 529.

But we are not satisfied from the evidence that defendant's title was not good. The title company reported it " good as a possessory title." By this, as we understand the term, is meant a title good by prescription or adverse possession under such circumstances and for such length of time as to have ripened into a perfect title, indefeasible at law or in equity. The purchaser objected because the title was not " perfect of record."

We do not understand that by a "good title" is necessarily meant one "perfect of record." If, by common usage in the business of buying and selling lands in the city of Washington, this has become the meaning of the term as used in contracts similar to the one made in this case, there is nothing in the record to show it. If, therefore, the title was actually good, and did not need the quit claim of Walter for aught else than to exhibit upon the record a title already indefeasible, the objection raised by the purchaser Warren was legally indefensible.

Under the report of the title company, we think it was incumbent upon the plaintiff to show that the title was not good without a release of the outstanding title or claim of the said Walter, and that this alone prevented the completion of the sale, in order to bring himself within the rule above laid down. This he failed to do. It is true that he introduced evidence to show that the " title was unmarketable." This was not sufficient. In the absence of proof of what may be meant or understood by an " unmarketable" title—if indeed it have any special or technical meaning at all—we cannot hold it to be the equivalent of a bad title, or a title that is not good. A *good* title may be " unmarketable " sometimes ; that is to say, that though good, ordinary purchasers might be deterred from buying by-reason of some circumstance or irregularity attending it.

Taking the evidence, then, as shown in the record, we

think that if Warren's contract for the purchase of the lot had been absolute, he could not have escaped liability in an action for damages for his refusal to complete the purchase. The contract, however, was not absolute. By its terms, the purchaser, had the option "to make full settlement" in accordance with the terms of sale within thirty days or forfeit his deposit of $100. There is no evidence in the record to show whether this deposit was returned to him, or retained as forfeited upon his refusal to complete the purchase. The evidence does show, however, that the plaintiff prepared and signed the contract with Warren, and that the defendant merely ratified it through his partner, who endorsed it as "accepted" for him. Under such a contract as this, made by the broker himself, can it be said that he has *found a purchaser* until the option shall have been exercised and the purchase completed? We think not. *Kimberly* v. *Henderson*, 29 Md. 512. This was an action upon a contract to find a purchaser for land which the owner wished to sell, and is directly in point. Speaking for the whole court, Mr. Justice ALVEY said: "A party was produced, it is true, and a contract entered into through the agency of the appellees [the brokers], but of such a character that the party contracting, by the exercise of an option given him, relieved himself of the obligation to complete the purchase, and did not in fact become the purchaser. Moreover, the written memorandum of sale was prepared by one of the appellees, . . . so that if the right to full commissions on the entire contract price of the property is made to abide the election given the party with whom the contract was made, the appellees cannot complain. The instruction given the jury, at the instance of the appellees, affirmed that the appellees were entitled to their commission as brokers for their services in effecting the negotiations which terminated in the agreement, as fully as if a deed for the property had been executed, and the purchase money paid. This was clearly erroneous."

There being no error in the ruling of the trial judge, *the judgment must be affirmed, with costs to the appellee; and it is so ordered.*

A motion for a rehearing was denied.