WELTMAN'S, Inc. v. FRIEDMAN et al.
(Weinberg & Bush, Inc., third-party defendant).

Civ. A. Nos. 287–50, 3373–51.

United States District Court
District of Columbia.

Jan. 30, 1952.

486

Fred M. Vinson, Jr., and James M. Earnest, both of Washington, D. C., for the motion.

Joseph A. Kaufmann, of Washington, D. C., opposed.

HOLTZOFF, District Judge.

The question presented on this motion to amend findings and judgment or, in the alternative, for a new trial, is whether a real estate broker, who procures a purchaser ready, able and willing to buy the property on the specified terms, is entitled to recover his commission if the sale is not consummated due to the fact that the broker's employer is unable to convey good title. Stated more narrowly, the question is, whether in the case of property owned by husband and wife as tenants by the entirety, the broker who is hired by the husband and procures a purchaser is entitled to recover his commission from the husband if the sale is not consummated because the wife refuses to join in the conveyance.

The defendants Joseph Friedman and Sara E. Friedman, were owners as tenants by the entirety of certain real property located in the District of Columbia. The defendant, Joseph Friedman, listed the property for sale with Weinberg & Bush, Inc., a real estate broker. Thereafter the broker arranged for a sale of the property to David J. Weltman, plaintiff's assignee. The latter executed a formal contract agreeing to buy the property on the terms originally specified by the defendant, Jo-

seph Friedman, who in turn accepted and signed the document. Friedman's wife was not asked to sign owing to the fact that she was ill. At the time set for settlement she declined to join in the conveyance and the sale fell through.

The plaintiff then brought two actions, one for specific performance, and the other for damages. They were consolidated for trial. The defendant, Joseph Friedman, brought in the broker, Weinberg & Bush, Inc., as a third-party defendant, on the theory that the latter might have made some representations as a result of which he might be liable to the defendant, Joseph Friedman. The broker filed a cross-claim against Joseph Friedman for a commission.

After a trial on the merits, the Court held that the defendant, Joseph Friedman, was guilty of a breach of contract, but that specific performance could not be decreed in view of the fact that his wife had not signed the contract of sale and, therefore, could not be required to convey her interest in the property.[1] The Court accordingly awarded damages to the plaintiff as against the defendant, Joseph Friedman alone. The Court also found in favor of the broker on his cross-claim and granted judgment in his favor against Joseph Friedman for the amount of his commission.

Joseph Friedman as third-party plaintiff now moves to amend the findings and judgment or, in the alternative, for a new trial in order to secure a reconsideration of his liability to pay a commission to the broker. It is claimed that since the broker knew that Joseph Friedman did not have full title to the property, but that it was held by Friedman and his wife as tenants by the entirety, the broker is not entitled to recover any commission in view of the fact that the sale failed because the wife declined to convey her interest. On the other hand, the broker contends that he has fulfilled his part of the undertaking when he produced a purchaser ready, willing and able to buy on the terms specified

1. If plaintiff had been willing to accept a conveyance, subject to the wife's interest, specific performance would have been decreed as against defendant, Joseph Friedman. The plaintiff, however, was not willing to do so. Allison v. Mackey, 88 App.D.C. 154, 155, 188 F.2d 983.

by the person who hired him, i. e., Joseph Friedman, and that the wife's refusal to join in the deed does not bar his right to a commission.

■ A person who hires or retains a broker to sell property on specified terms, in theory, makes an offer to the broker looking forward to the making of a unilateral contract, to the effect that if the broker procures a purchaser ready, able, and willing to buy the property on the specified terms, either the agreed or the customary commission will be paid to the broker as compensation for his services. When such a purchaser is produced by the broker, a unilateral contract arises by which the person hiring the broker becomes obligated to pay compensation for the broker's services. On principle, this conclusion is inescapable. It follows, hence, that it is immaterial if the sale later falls through because the person who hired the broker finds himself unable to convey good title to the property. The person who engages a broker to sell property must be deemed to contemplate the assumption of an obligation to convey good title and if he does not have it, then to acquire it for the purpose of conveying it to the prospective purchaser. As a practical matter, it is not unusual for a person to agree to sell property, either real or personal, that he does not own, it being his intention to acquire it before a conveyance is required by the contract. Short sales on stock and commodity exchanges are examples of transactions of this type. The broker has a right to assume that this is what the owner intended to do. As a matter of fairness and justice, any other rule would be inequitable, because it would accord opportunity to property owners, who desire to change their minds, to escape contractual obligations that they have undertaken. It would also become a device to evade payment of compensation to the broker for the services that he has rendered at the request of his employer. It is clear, therefore, that on principle the broker earns his commission as soon as he produces a purchaser ready, willing, and able to buy on the terms specified by his employer, even though the sale fails to materialize because of the inability of the latter to convey good title.

Although the decisions on this point are not at unison, the weight of authority sustains this view. It is a well-established general principle that a broker earns his commission as soon as he procures and tenders a purchaser ready, able, and willing to buy on the authorized terms, Block v. Ryan, 4 App.D.C. 283, 286; Dotson v. Milliken, 27 App.D.C. 500, 514, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768. It has been expressly held in a number of States that the broker is entitled to his commission under these circumstances, even though his employer's title is defective and the broker knows of the defect. Among these States are California, Kansas, Minnesota, Nebraska, Tennessee, and Virginia. Martin v. Ede, 103 Cal. 157, 37 P. 199; Russell v. Ramm, 200 Cal. 348, 254 P. 532; Staley v. Hufford, 73 Kan. 686, 85 P. 763; Hamlin v. Schulte, 34 Minn. 534, 27 N.W. 301; Bell v. Stedman, 88 Neb. 625, 130 N. W. 257; Campbell v. Arthur H. Campbell & Co., 155 Tenn. 515, 296 S.W. 9; Price v. Francis, 184 Va. 484, 35 S.E.2d 823.

In Martin v. Ede, supra, the Court pointed out that men frequently contract to sell what they do not own, expecting to acquire the property in time to enable them to convey it to the purchaser.

Each of the other cases just cited involved situations parallel to that presented in the case at bar, that is, where the wife had an interest in the property and refused to join with the husband in a conveyance. The husband who had retained the broker, nevertheless, was held liable to pay the broker's commission.

In Campbell v. Arthur H. Campbell & Co., supra, the Court stated that the right of the broker against the husband cannot be defeated by the refusal of the wife to join in a conveyance.

In Price v. Francis, supra, 184 Va. at page 491, 35 S.E.2d 823, 826, a recent Virginia case, in which the husband was held liable for a commission under similar circumstances, it was stated: "It is a matter of common knowledge that people do enter

into contracts to sell property which they do not own."

There are some jurisdictions that have reached the opposite conclusion. Renick v. Mann, 194 Ky. 251, 253, 238 S.W. 763; Best v. Kelley, 22 Wash.2d 257, 268, 155 P.2d 794, 156 A.L.R. 1387. It must be observed, however, that in Renick v. Mann, an exception was expressly made for a situation in which it was the intention of the parties that the broker's employer should subsequently perfect his title in order to perform the contract of sale. Even under this rule, the case at bar would be within the exception, because obviously it was the intention of the parties that the defendant Joseph Friedman should perfect his title or obtain his wife's signature to the conveyance.

The opinions of the Court of Appeals for the District of Columbia clearly prefer the majority rule summarized above. Thus, in Block v. Ryan, 4 App.D.C. 283, 286, Mr. Justice Shepard wrote as follows: "As a general proposition it is well settled that a broker is entitled to his commission when he shall have procured a purchaser who is in a situation and ready and willing to complete the purchase on the terms proposed by the seller, and his right is not affected by the refusal of the seller to go on and perfect the sale."

Again, in Dotson v. Milliken, 27 App. D.C. 500, 514, the same doctrine was reiterated as follows: "It is well settled that when an agent, employed for the purpose, procures a purchaser willing and able to buy on the authorized terms, he becomes entitled to his compensation although the sale may not be consummated, provided the consummation is prevented by the refusal, fault, or defective title of the principal."

The conclusion necessarily follows that in this case the broker had earned his commission and was entitled to recover it from his employer, the defendant Joseph Friedman.

Motion to amend findings and judgment or, in the alternative for a new trial, is denied.