**MID–CENTURY, LIMITED, OF AMERICA,
v. UNITED CIGAR–WHELAN
STORES CORP.**

Civ. A. No. 426–51.

United States District Court
District of Columbia.

Jan. 23, 1953.

Joseph FitzGerald, Jr., of Washington, D. C., for plaintiff.

Lester Wood, of Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action to recover a liquidated sum of money alleged to be due pursuant to a written instrument. The Court directed a verdict in favor of the plaintiff for the full amount claimed, with interest. The defendant now moves for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

The obligation on which the suit was brought was a supplement to a long term lease, and provided that if the lease were cancelled in accordance with its terms, the lessee would reimburse the lessor for the broker's commission and architect's fees incurred by the lessor. The salient features of the transactions between the parties may be summarized as follows.

On December 16, 1946, Joseph H. Himes Company, Inc., the plaintiff's assignor, leased to the defendant for a term of twenty years a store and storage space in a new building to be erected by the landlord. The space was outlined on plans and described in specifications attached to the lease. The landlord undertook to demolish the buildings then on the site and to complete the new structure not later than December 1, 1948.

Paragraph Twenty-third of the lease contained an agreement on the part of the landlord to pay to the brokers their regular rate of commission fixed by the Washington Real Estate Board, the commission to be payable either on the amounts of rent collected and when collected, or as a cash commission as prescribed by the Washington Real Estate Board, at the option of the landlord.

Paragraph Twenty-fourth provided that if the landlord was prevented from commencing the demolition of the existing building by June 30, 1948, by reason of a final adjudication of a civil action instituted by the landlord against the tenant of that building, the lease would terminate.

On October 1, 1947, the lease was modified by extending the landlord's time to demolish the existing structure and complete the new building, to December 1, 1949.

On May 18, 1948, the lease was further modified by extending the date of completion of the new building to December 31, 1953, and by granting to the landlord the right to cancel the lease prior to a certain time specified in the agreement. On the following day, May 19, 1948, another document was executed in the form of a letter addressed by the tenant to the landlord, in which the former agreed that if the lease should be cancelled by the landlord, pursuant to the modification dated May 18, 1948, the tenant would hold the landlord harmless from liability for the payment of the real estate commission provided by Paragraph Twenty-third of the lease. The letter contained a statement that if the lease should be cancelled, the landlord would elect as of the date of the cancellation to pay the commission on a cash basis, as prescribed by the Washington Real Estate Board, and the liability of the tenant would be limited to the amount of the cash commission so fixed. By the same instrument the tenant further agreed to reimburse the landlord for the services rendered by the architect in connection with the plans for the new building in an amount not exceeding $1,000. The landlord was asked to sign an acceptance of the letter with a statement that the document should constitute a binding agreement between the parties. The landlord signed the acceptance accordingly.

On November 7, 1950, the lease was formally cancelled by the landlord. In the meantime, but subsequently to May 19, 1948, the landlord had paid the broker's commission, amounting to $13,125; and the architect's fees, amounting to $481.04. By letter of November 7, 1950 terminating the lease, the landlord demanded from the tenant reimbursement for the foregoing

amounts. The defendant failed to pay and thereupon this suit was brought.

Obviously, the defendant was guilty of a clear repudiation of a formal, unequivocal, written obligation. Defendant's counsel has resourcefully endeavored to rationalize and justify this attitude on a number of grounds. First, it is claimed in behalf of the defendant that its agreement to indemnify the plaintiff's assignor for broker's commissions and architect's fees, is lacking in consideration and is, therefore, *nudum pactum* and unenforceable. This contention is, however, based on a misconception of the status of the document of May 18, 1948. It is not a separate and independent undertaking. On the contrary, it is a supplement to and a modification of the original agreement of lease, which was admittedly founded on a good consideration. A modification of a valid and binding agreement does not require a separate or additional consideration. Thus, in Jacobs v. J. C. Penney Co., 7 Cir., 170 F.2d 501, Judge Minton, now a Justice of the Supreme Court, stated that in the case of a modification of an executory contract, the consideration for the original executory contract is imported into and becomes the consideration for the modified contract, and no new or additional consideration is necessary. To the same effect is Raymond v. Smith, 5 Conn. 555, 560. In that case the Court said that the variation of an agreement "while it remained executory, required no future consideration".

Pollock on Contracts, Thirteenth Edition, 1950, p. 152, supports this view in the following language:

"Where the parties to a contract agree to a variation of it and, in pursuance thereof, one party makes a promise to the other which he knows will be acted on and which is in fact acted on by the promisee, the promise will bind the promisor to the extent that he must not act inconsistently with it, even though the promise may not be supported by consideration, and even if

the effect of it is to vary the terms of a contract under seal by a term of less value."

Even if, however, the indemnity agreement is to be treated as a separate contract, it is in fact founded on a good consideration. The document then becomes an offer looking toward making a unilateral contract. For example, if A says to B,— "If you will pay C so and so much money, I shall reimburse you", and B, in reliance upon this statement, pays the money to C, the payment becomes good consideration, and A's promise matures into a binding contract.[1]

In the instant case the plaintiff's assignor made the payment in reliance on the promise to indemnify him and, accordingly, a binding obligation arose to reimburse him. In fact, some cases would go as far as to hold that the offeror under such circumstances is estopped from asserting that his promise was without consideration. In re Campbell, 9 Cir., 105 F.2d 197, 200, 124 A.L.R. 1243.

The conclusion is inescapable that no matter how it may be viewed, the legal instrument involved in this case is a valid and binding obligation.

It is further urged by counsel for the defendant that the broker's commission had not been earned and was not due, and that, therefore, the plaintiff's assignor should not have made the payment to the broker. This contention is predicated on the postulate that a commission for obtaining a lease on space in a building to be erected in the future, is not payable until the structure is constructed and the lease has commenced to run. The cases cited in support of this unusual assertion, however, do not sustain it. It is an elementary rule of law that a broker ordinarily earns his commission when he produces a purchaser ready, able, and willing to buy; or a tenant ready, able, and willing to lease, on the owner's terms, Block v. Ryan, 4 App.D.C. 283, 286; Dotson v. Milliken, 27 App.D.C. 500, 514.

1. See Weltman's Inc. v. Friedman, D.C., 102 F.Supp. 485, 487; Restatement of the Law of Contracts, secs. 12, 75, 90; Williston on Contracts, secs. 13, 102.

436

The contract between the parties leaves this matter beyond the peradventure of a doubt. Paragraph Twenty-third of the original lease provided that the landlord should pay the broker's commission, either on the amounts of rent collected and when collected, or as a cash commission as prescribed by the Washington Real Estate Board, at the landlord's option. The supplement, dated May 19, 1948, committed the tenant to hold the landlord harmless from any liability for the payment of the commission, and further provided that the landlord would elect in the event of a cancellation of the lease to pay the commission on a cash basis. It is clear, therefore, that the parties contemplated the payment of the commission in case of the termination of the lease.

It is argued that the schedule of commissions prescribed by the Washington Real Estate Board provided that commissions in cases of leases of business property would be due and payable in cash upon consummation of the lease. It is urged that the word "consummation" means the fulfillment of the lease, rather than its mere execution. Authorities are not at unison on the meaning of the term "consummation", as it is not a word of art. To review the decisions on this point would be useless, because each case must be decided on its own facts. It is clear that in this instance the reference to the schedule promulgated by the Washington Real Estate Board was merely for the purpose of computing the amount of the commission due. The parties contracted when the commission should be payable, namely, that in case the landlord should elect to terminate the lease, the commission should then be paid on a cash basis as prescribed by the Washington Real Estate Board, and the tenant would reimburse the landlord for the amount so expended by the latter. It is fallacious at this late date to argue that no commission had been earned and was not due in the event of the termination of the lease, as the parties expressly agreed to the contrary.

The motion for judgment notwithstanding the verdict or in the alternative for a new trial, is denied.