300 P.2d 583

Irving L. DIAMOND and Edward L. Perry, d/b/a Diamond & Perry, Realtors, Appellants,

v.

Mac CHIATE, Appellee.

No. 6107.

Supreme Court of Arizona.

July 16, 1956.

Rehearing Denied Sept. 25, 1956.

Stahl, Murphy & Blakley, and Keith W. Ragan, Phoenix, for appellants.

Beer & Seaman and C. Edwin Thurston, Phoenix, for appellee.

UDALL, Justice.

This is an appeal by plaintiffs, Diamond and Perry, licensed realtors, from a judgment entered upon a jury verdict for defendant-appellee, Mac Chiate, in an action for a brokerage commission.

On March 3, 1952, Chiate listed for sale with plaintiffs a retail package liquor business which included a Series No. 9 liquor license, an inventory in the amount of $4,-

000, and all fixtures and equipment. The listing contract which was in writing indicated that Chiate owned the property to be sold, and provided for a broker's commission of ten per cent of the sales price in the event the brokers were successful in securing a purchaser in accordance with the terms and conditions of such contract. Diamond and Perry procured a prospective purchaser, one Schumacher, who was ready, willing and able to buy said property on the seller's terms, and the latter signed a contract to purchase the business and license on April 13, 1953. On April 24, 1953, Chiate signed said contract, agreeing inter alia to sell said property and unreservedly promising to pay to Diamond and Perry the sum of $3,500 as a commission. There were recitations in the contract to the effect that (1) the seller was the sole owner of said personal property "and that the same is clear, free and unencumbered except as herein stated", and (2) "Said property to be free and clear of all purchase and installment contracts, chattel mortgages, judgments, mechanics and materialmens liens, personal property, license and sales taxes, and all other liens and encumbrances, except as here stated." The sale was never consummated due to the fact that Chiate actually did not own the liquor license but merely had what he considered to be an option to buy, and was unsuccessful in exercising this purported option. The $2,000 earnest money paid by

Schumacher was returned to him. Subsequently, plaintiffs demanded their commission from Chiate, who refused to pay them. This suit followed.

At the trial plaintiffs relied on the above facts, while Chiate based his defense on the allegation of his answer "that one of the conditions upon which said business was listed with plaintiffs for sale was that defendant was not the owner of said liquor license and could only sell the same upon defendant's being able to purchase said license from the owner thereof" and on the fact that before listing the property he had informed the plaintiffs he did not own the liquor license, merely having an option to buy. Neither the listing contract nor the purchase contract, both of which were admitted into evidence, contained any provisions indicating that Chiate did not own the license or that the brokers' commission was to be contingent upon Chiate's being able to purchase it from the true owner; to the contrary, the contracts without ambiguity designate him as the owner.

It should be noted that defendant's answer contains no charge of fraud or misrepresentation on the part of plaintiffs in procuring the listing or in obtaining the purchase contract dated April 13, 1953. Furthermore during the trial there was no claim made that the contracts in question were induced by deceit or misrepresentation.

Under the theory that it might show evidence of bad faith on the part of plaintiffs the trial court admitted into evidence conversations between Perry and Chiate leading up to the execution of the listing contract insofar as said conversations tended to show that plaintiffs knew that defendant did not then own the property concerned. This evidence was admitted over the repeated objections of plaintiffs that such testimony violated the parol evidence rule. Since the jury found in favor of defendant we must assume that the verdict was based on the testimony that plaintiffs knew Chiate did not own the liquor license at the time he signed the listing contract, but merely possessed an option to buy it. The next discussion occurred on April 14, 1953, when Perry brought the purchase contract to Chiate to sign. On this occasion Chiate advised Perry that he was going to see his lawyer and start negotiations to exercise his option to purchase the license. On April 24, 1953, after having consulted with his attorney, defendant signed the purchase contract notwithstanding his statement to Perry at the time that he could not do so because he did not own the property. During this same conversation and before he signed the contract Chiate admitted that Perry had told him he had been advised by the husband of the owner of the license that the license would not be sold to Chiate.

At the close of all the evidence counsel for plaintiffs made a motion for a directed verdict which the court denied. The case was then submitted to the jury and it returned a verdict for defendant. Thereafter, plaintiffs moved to set aside verdict and for judgment in accordance with motion for directed verdict, and, in the alternative, motion for new trial. All of these motions were denied and judgment was then entered for defendant Chiate on the verdict. A timely appeal was perfected.

In substance, plaintiffs (appellants) assign as error: (1) the admission by the trial court of evidence leading up to the execution of the listing contract as being in violation of the parol evidence rule and not within the issues of the pleadings; (2) the failure of the evidence to show knowledge of an incurable defect in title on the part of plaintiffs or any bad faith on their part, and (3) that the uncontroverted evidence indicated it was the intention of the parties that the defendant was to perfect his title in order to be able to perform in accordance with the terms of the listing and purchase contracts executed by the parties.

The first question to be decided concerns the admissibility of earlier conversations between the parties, since they clearly have the effect of altering the subsequent written contracts. A reading of the transcript

makes it crystal clear that the trial court, in admitting such testimony, was relying, as it had a right to do, upon the majority decision of this court rendered in Sligh v. Watson, 1950, 69 Ariz. 373, 214 P.2d 123, 129, wherein the admission of similar testimony was upheld in a completely analogous situation. That decision was rendered by a divided court (3 to 2) and the respective views, which need not be reiterated here, are fully set forth in the majority and minority opinions. Plaintiffs have asked that the court, as now constituted, re-examine this decision. This we have done.

It will be recalled that in the Sligh case, supra, the court held that parol evidence of the broker's knowledge of defects in the seller's title was admissible on the theory that it was to establish a breach of the brokerage contract, because it was relevant to the question of good faith dealing between the parties, even though the owner possessed like knowledge. The pleading of such mutual knowledge of a defect in title was considered equivalent to pleading a breach of contract by reason of bad faith, therefore not within the restrictions of the parol evidence rule. The court said:

"Such a plea basically admits the contract and seeks release from the consequences thereof *because of the breach of faith in having obtained the contract;* * * *." (Emphasis supplied.)

The end result of the Sligh decision was to exempt brokerage contracts from the unvarying certainty given to other contracts by the parol evidence rule, and to subject them to the vagaries of parol modification, at least as to the nature and quality of the seller's title.

We have recently said, in the case of Carrillo v. Taylor, 81 Ariz. 14, 299 P. 2d 188, 196:

"It is fundamental that the parol evidence rule is a doctrine of substantive law and not merely an exclusionary rule of evidence. * * * Its purpose is to lend stability to integrated written expressions of intent in transactions by the process of excluding facts tending to vary, controvert or add to the expressed, unambiguous meaning of the parties thereto."

In other words, where the knowledge, negotiations, agreements and thoughts of the parties to a contract are set out therein without ambiguity then parol evidence contrary thereto is inadmissible. Regardless of whether the broker has actual knowledge of defects in the seller's title, when the parties sign an agreement which is complete on its face they are bound thereby, in the absence of an equitable claim for relief on account of deceit or mistake which would vitiate the entire contract. See cases cited in dissenting opinion, Sligh v. Watson, supra. We now hold—not-

withstanding anything in the court's opinion in the Sligh case to the contrary—that evidence of mutual knowledge of defect in title which runs directly contrary to the recitals of the contract that title is clear and unencumbered is not within any recognized exception to the parol evidence rule and does violence to said rule.

In support of this holding we point out that the situation known to plaintiffs at the time a purchaser was procured was that the defendant Chiate had a lease with an option to buy a liquor license. The defendant so testified. The general rule in such matters is well stated in McDonald v. Bernard, 87 Cal.App. 717, 262 P. 430, 431, viz.:

"* * * a party may contract with a broker to procure a suitable purchaser for property which he does not own and his subsequent failure to perfect a title which would enable him to complete a sale does not affect his liability to the broker."

Cited therein is the leading case of Martin v. Ede, 103 Cal. 157, 37 P. 199, 200, from which we quote:

"* * * To entitle plaintiff to recover his commissions under the agreement, it was only necessary to show that in pursuance of his employment, and within the time specified therein, he found a purchaser ready and willing to purchase the property on the terms specified in the authorization. This he did beyond dispute. *With the title or ownership of the property he had nothing to do,* and his knowledge as to the title or the equitable estate of Josephine Cory therein was of no consequence. *These were questions for the defendant to determine when he made the agreement.* It is a matter of common knowledge that, in the business world, men do frequently obtain what are termed options upon real property, —that is to say, the right to purchase, —and then employ brokers to negotiate a sale at an enhanced price, the title being all the while in others. Brokers sell tons of wheat for future delivery on account of principals who do not or may not own a kernel of that commodity, yet, in the absence of law prohibiting such sales, they are entitled to their commissions, and knowledge of the nonownership of their principals does not defeat their right to recover. A. may possess such knowledge as justifies him, in his judgment, in contracting to sell, or in contracting with a broker to sell for him, or to find a purchaser for, property which he does not own. *If he does so without so guarding his agreement as to save himself in case of failure to secure title to the thing he has authorized to be sold, he cannot be heard to complain of the result of his own*

92

*folly or lack of foresight. * * *"* (Emphasis supplied.)

For a good illustration of how a vendor can guard his agreement so as to save paying a broker's fee, see the opinion in Kostan v. Glasier, 337 Mich. 287, 60 N.W.2d 283, 284, for there it was written into the agreement " 'Commission payable only when and if deal is finally closed' ". See, also, Weltman's, Inc., v. Friedman, D.C., 102 F.Supp. 485, 487, wherein Judge Holtzoff reviews the authorities and enunciates the following principles:

"* * * Although the decisions on this point are not in unison, the weight of authority sustains this view. It is a well-established general principle that a broker earns his commission as soon as he procures and tenders a purchaser ready, able and willing to buy on the authorized terms, * * *. [Citing cases.] It has been expressly held in a number of States that *the broker is entitled to his commission* under these circumstances, *even though his employer's title is defective and the broker knows of the defect.* Among these States are California, Kansas, Minnesota, Nebraska, Tennessee, and Virginia. (Citing cases.)" (Emphasis supplied.)

Defendant in his pleadings, at the trial, and on appeal to this court has stood upon the proposition that mutual knowledge of defect in title, standing alone, will bar recovery by a broker. This is not the law. The rule is well stated in 12 C.J.S., Brokers, § 95(4), as follows:

"Defects in Principal's Title

"In the absence of a provision to the contrary in the contract of employment, a broker may be entitled to a commission even though the transaction in question fails of consummation because of a defect in the principal's title. To be entitled to a commission on a transaction which fails of consummation because of an absence of, or defect in, title, the broker must not be at fault nor have knowledge or notice, at the time of procuring the customer, of the absence of, or defect in, title; but this rule does not extend to removable defects or curable lack of power to convey, the broker being entitled to assume, in the absence of knowledge or notice to the contrary, that the principal will be able to furnish a marketable title and to secure such action by other persons as may be necessary to consummate the sale."

Defendant contends that because the plaintiffs were both experienced brokers and experts in the field of liquor license transactions that—before procuring the signatures of Schumacher and Chiate to the contract of purchase—they had a duty to make inquiry and check the status and marketability of the liquor license in question. He suggests that the knowledge,

training and experience of plaintiffs was such that with little effort they might have discovered that defendant's title defect was incurable. The answer to this is that plaintiffs were entitled to rely upon defendant's representations that he would obtain a clear title to the license. In our opinion no such duty devolved upon plaintiffs, as a broker has a right to rely on the statements of his principal and ordinarily need not conduct an independent investigation as to the condition of the vendor's title. 12 C.J.S., Brokers, supra. Defendant himself testified that he had told plaintiffs he had a right to purchase the license; he had taken steps—even to the extent of instituting suit against the real owner—to obtain the license; he executed a bill of sale subsequent to signing the purchase contract that included the license; he signed an application for transfer of the license as owner thereof. The following was then asked:

"Q. "It's true, is it not, Mr. Chiate, that you know of nothing Mr. Perry and Mr. Diamond did to prohibit the consummation of that contract? A. No, I don't." ,

On this posture of the record it is clear the evidence is insufficient to establish any bad faith on the part of plaintiffs which would bar recovery on their part.

In view of the above authorities and considerations we hold that plaintiffs and defendant were bound by their contract for commission as written in the listing agreement and the purchase contract, and by the recitals therein that defendant was the owner of the property subject to sale.

Insofar as the Sligh decision, supra, conflicts with the views herein set forth it is, to that extent, expressly overruled.

We conclude that the trial court erred in sending the case to the jury. The judge should have directed a verdict for the plaintiffs at the end of defendant's case, and, failing that, should have granted judgment n.o.v. after the jury reached a verdict for defendant.

Judgment reversed with directions to enter judgment for plaintiffs.

WINDES, PHELPS and STRUCK-MEYER, JJ., concur.

LA PRADE, Chief Justice (concurring in part and dissenting in part).

I concur in the result reached by the majority but dissent as to the overruling of Sligh v. Watson, supra. First, I believe that the Sligh case followed the majority rule in this country. See Annotation Real Estate Brokers' Commissions, 156 A.L.R. 1398. Second, the policy enunciated by the general rule recognizes the fiduciary relationship existing between the real estate broker and his client and, I believe, correctly places a duty on the real estate broker of not attempting to sell property subject to defects of which he is cognizant at the time of the listing. The majority opinion

in this case will, in my opinion, permit realtors to persuade persons of little business acumen to sign listing contracts stating unequivocally that they are the owners of the property to be sold, when in actuality the broker is aware of defects, such as existed in Sligh v. Watson, supra, and Best **v.** Kelley, 1945, 22 Wash.2d 257, 155 P.2d 794, 156 A.L.R. 1387, to name but two, which may make any sale impossible. As the Supreme Court of Kentucky stated in Hurt v. Sands Co., 1930, 236 Ky. 729, 33 S.W.2d 653, 654:

"* * * No broker has any right to negotiate a contract at the expense of his employer when he knows of facts or circumstances which will prevent the deal from being consummated. * * *"

The majority opinion relies on the parol evidence rule, but here again I must respectfully dissent for I do not believe it applicable. As was said in Dunn v. Kramer, 1948, 306 Ky. 377, 208 S.W.2d 41, 43, in answer to the contention that the parol evidence rule applied:

"* * * There are two answers to this contention: (1) the relationship of principal and agent requires good faith dealing between the parties, and evidence of the lack of it upon the part of the agent is always admissible, * * *."

In closing, I should merely like to point out that the general rule as enunciated in

8 Am.Jur., Brokers, Section 185, p. 1098, quoted with approval in the majority opinion in Sligh v. Watson, supra, requires the admission of parol testimony as to conversations between the parties leading up to the execution of the listing contract. As a result all jurisdictions which follow said rule must, of necessity, consider the parol evidence rule to be inapplicable, presumably for the same reason as stated by the Supreme Court of Kentucky in Dunn **v.** Kramer, supra.