T. W. DANIEL AND J. M. DANIEL v. TALLASSEE POWER COMPANY.

(Filed 1 March, 1933.)

1. **Tenants in Common B c—Refusal to confine action between tenants for waste to issue of title held not error although partition proceedings had been instituted.**

   One tenant in common may sue another for waste, and while a tenant in common is usually entitled to an allotment of that part of the common property on which in good faith he has made improvements and to have its value assessed as if no improvements had been made, where suit has been entered against one tenant in common by his cotenants

DANIEL v. POWER CO.

to recover damages for the ponding of water upon the land and for waste in cutting trees thereon, and pending the action the defendant institutes proceedings in partition, and the action for waste is first upon the calendar: *Held*, the trial court's refusal to limit the action for waste to the issue of title and upon determination of the issue to have the land partitioned is not error, and the fact that the proceedings for partition is pleaded as a further defense does not affect the allegation in the complaint. C. S., 891.

2. **Deeds and Conveyances D c—Admission of parol evidence of boundary in contradiction of unambiguous description in deed held error.**

In an action involving the boundaries to lands the plaintiff introduced evidence of a parol agreement between plaintiff and contiguous owners fixing the boundaries. The description in the deed introduced by plaintiff was unambiguous and was at variance with the boundaries agreed upon by parol: *Held*, the evidence of the parol agreement respecting the boundaries was incompetent, the parol agreement not being contemporaneous with the execution of the deed, and being in contradiction of the unambiguous description therein.

APPEAL by defendant from *Harding, J.*, at July Term, 1932, of DAVIDSON. New trial.

The plaintiffs and the defendant are tenants in common of a tract of land situated in Healing Springs Township, Davidson County, T. W. Daniel owning a 3/24 undivided interest, J. M. Daniel a 7/24 undivided interest, and the defendant at 14/24 undivided interest.

The plaintiffs brought suit to recover damages of the defendant for ponding water upon the land by the construction of a dam on Yadkin River and for waste committed by cutting and removing timber from the land.

The defendant denied that the boundaries of the land are as alleged by the plaintiffs, set out others which it claimed to be the correct boundaries, and alleged that there was pending in the Superior Court of Davidson County an action entitled "Tallassee Power Company v. J. M. Daniel and T. W. Daniel," in which the petitioners requested partition of the land in controversy and an allotment to the defendant of the part which the defendant has cleared and flooded.

The jury returned the following verdict:

1. Are the plaintiffs and defendants owners and tenants in common in the land in controversy as contended for by the plaintiffs and represented on the map made by the surveyor appointed by this court, bounded by the letters and figures on said map and the lines running between red A, red B, yellow one, yellow two and yellow three, or red E, red F, and down Flat Swamp Creek as represented on the map to red A? Answer: Yes.

2. Are the plaintiffs and defendants owners of and tenants in common in the lands in controversy as contended for by the defendant and

represented on the map made by the surveyor appointed by this court, bounded by the letters on said map and the lines running between red A, red B, red C, red M, red N, red O, red D, red E, or yellow three, red F, and down Flat Swamp Creek, as represented on the map, back to red A? Answer: .. ......... .

3. Did the defendant wrongfully damage the said land, as alleged in the complaint? Answer: Yes.

4. What permanent damages, if any, are the plaintiffs entitled to recover of the defendant? Answer: $3,000.

It was adjudged that the parties are tenants in common, as alleged, of the tract described in the complaint, that the plaintiffs recover $3,000 as permanent damages, and that upon payment of this sum the defendant, the Carolina Aluminum Company (successor of Tallassee Power Company), shall have a permanent easement to maintain the impounded water at the present maximum height of the High Rock Dam free from any claims on the part of the plaintiffs, their heirs and assigns, and to clear and keep clear a strip of land two feet above the maximum elevation of the dam.

The defendant excepted and appealed.

*Spruill & Olive, J. M. Daniel, Jr., and Phillips & Bower for plaintiffs.*
*W. M. Hendren, Raper & Raper and R. L. Smith & Sons for defendant.*

ADAMS, J. After this action had been instituted the defendant brought a proceeding before the clerk of the Superior Court for partition of the land owned by the parties and asked that the area appropriated by the defendant be allotted to the Power Company at a value to be estimated without regard to the use for which the property had been taken. The present plaintiffs, who were defendants in that action, filed an answer and upon the joinder of issue on the question of location the proceeding was transferred to the civil issue docket. At the July Term both actions were on the calendar for trial on the same day, the case at bar having precedence in point of time. When the case was called the defendant moved that the trial be restricted to an issue of title and upon determination of the issue to have the land partitioned. The court denied the motion and the defendant excepted.

This Court has frequently applied the equitable principle that a tenant in common upon the partition of land is usually entitled to an allotment of that part of the common property on which in good faith he has made improvements and that its value is to be assessed as if no improvements had been made. *Pope v. Whitehead,* 68 N. C., 191; *Collett v. Henderson,* 80 N. C., 337; *Simmons v. Foscue,* 81 N. C., 86;

*Cox v. Ward*, 107 N. C., 507; *Pipkin v. Pipkin*, 120 N. C., 161; *Fisher v. Toxaway Co.*, 171 N. C., 547; *Layton v. Byrd*, 198 N. C., 466.

These were proceedings for the partition of property, and if the Power Company were the actor the question proposed would demand consideration; but here the cause of action is set forth in the complaint filed by the plaintiffs upon which the defendant joins issue in its answer. The fact that the proceeding for partition is pleaded as a further defense does not affect the allegations in the complaint.

That the defendant cut wood from the land is not seriously contested; the disagreement has reference to the quantity and value of the wood or timber that was cut and removed. The cutting of trees may be waste and for waste one tenant in common may sue another. C. S., 891; *Hinson v. Hinson*, 120 N. C., 400; *Morrison v. Morrison*, 122 N. C., 598.

We are of opinion, however, that the court inadvertently admitted incompetent evidence to the prejudice of the defendant. The boundaries of the land set out in the complaint are as follows: "Beginning at a maple on the bank of Flat Swamp Creek, running thence south 77 deg. 8' east 1,959 feet to a rock and iron pipe, Oath Carrick's corner, on the line of tract No. 2; thence north 6 deg. 30' east 264 feet to a stake; thence N. 60 deg. 30' E. 1,470 feet to a stone heap; thence N. 12 deg. 45' W. 1,164 feet to an 18'' ash stump on the east bank of Bear Branch; thence down the meanders of the same 17 chs. to Flat Swamp Creek; thence down the meanders of Flat Swamp Creek to the beginning, containing 125 acres, more or less." These boundaries are not taken from any of the deeds and are at variance with those embraced in the deeds introduced by the plaintiffs and by the defendant. The land on which the water is said to have been ponded was known as the Woodson Daniel land and the adjoining tract as the Harris or Healing Springs tract. The former tract is described in a deed from J. C. Hedgecock to Woodson Daniel and James Lane: "Beginning at a maple on the bank of Flat Swamp; thence on a conditional line partly on east course 31 chains and 50 links to a pine; thence north 4 chains to a stake; thence east 19 chains to a post oak; thence north 26 chains to a black oak; thence west 7 chains to an ash on the bank of Bear Branch; thence down the meanders of the same 17 chains to Flat Swamp; thence down the meanders of the swamp to the beginning, containing 125 acres, more or less."

There is no controversy as to the location of the first two lines; nor is it denied that they correspond with the first two lines of the description given in the complaint. The dispute relates to the succeeding calls, those in deed being "thence east 19 chains to a black oak," etc., and those in the complaint "thence north 60° 30' E. 1,470 feet to a stone heap, thence north 12 deg. 45' W. 1,164 feet to an 18'' ash stump on the east bank of Bear Branch," etc.

T. W. Daniel, testifying in behalf of the plaintiffs said that he was present at a survey of the two tracts made between 1870 and 1875 when William Harris and Woodson Daniel, the owners of the adjoining tracts were present, and that a line was run from an ash on Bear Branch to a stone heap on the north side of the Turner lot and thence to a stake four chains north of the Oath Carrick corner, which is the end of the first line in the Hedgecock deed, and that the lines thus run, represented on the plat by the yellow figures 1, 2, 3, were agreed on by the parties.

The defendant objected to this evidence on the ground that as the lines indicated by the yellow figures are not called for in any of the deeds the plaintiffs have undertaken by parol evidence to establish new agreed lines and to contradict the unambiguous description in the deeds. We think the evidence should have been excluded.

The decisions of this Court are in support of the defendant's position. If the calls in a deed are sufficiently definite to be located by extrinsic evidence, the location cannot be changed by parol agreement unless the agreement was contemporaneous with the making of the deed. The instrument speaks for itself and where there is no ambiguity in the calls, as suggested in *Caraway v. Chancy,* 51 N. C., 361, "It seems most dangerous to carry the exception to the general rule of law." The principle is clearly stated and maintained in later cases. *Shaffer v. Hahn,* 111 N. C., 1; *Buckner v. Anderson, ibid.,* 572, 577; *Shaffer v. Gaynor,* 117 N. C., 15; *Haddock v. Leary,* 148 N. C., 378; *Boddie v. Bond,* 158 N. C., 204; *Woodard v. Harrell,* 191 N. C., 194. Where the location of a particular call in a deed is in doubt and the object is to find out where the line is a different principle prevails. *Taylor v. Meadows,* 175 N. C., 373; *Wiggins v. Rogers, ibid.,* 67; *Kirkpatrick v. McCracken,* 161 N. C., 198. Parol evidence is not admissible "to fit the description to the thing," when the calls in a deed are unambiguous and the lines sought to be established differ entirely from those in the deeds.

For error in the admission of evidence the defendant is entitled to a

New trial.