SALSBURY *v.* OLIPHANT.

4-8993                                         225 S. W. 2d 329

Opinion delivered December 5, 1949.

Rehearing denied January 16, 1950.

*Karl Greenhaw* and *O. E. Williams,* for appellant.

GEORGE ROSE SMITH, J. This is a boundary dispute between neighbors whose lands lie along a 1320-foot line separating two forty-acre tracts. The appellants' land is on the west, the appellee's on the east. Although the parties do not respectively own the entire forty-acre tracts, their common boundary line comprises the full 1320 feet. We are asked to review the chancellor's action in fixing a line that admittedly does not conform to the original United States survey of the two forties.

It is unnecessary for us to summarize the pleadings in order to state the issues. The present controversy really begins with a consent decree that was entered in this case on October 7, 1948. By that decree the court directed that "W. C. Smith or some other competent surveyor be employed to survey and establish the line" between the litigants' lands. It was further ordered that the surveyor report his findings as soon as possible so that a final decree might be entered.

Pursuant to this consent decree the appellants employed W. C. Smith, the designated surveyor. Smith reported to the court that he had found stone monuments marking both ends of the line separating the forty-acre tracts. These markers were of the kind used by surveyors and had evidently been set by man. Smith testified that he had verified the position of the markers with reference to established section corners and had

found the stones to be accurately placed. A straight line connecting the two monuments would therefore represent the correct boundary. That line would run about thirty feet east of the boundary asserted by the appellee and would take away a thirty-foot strip previously claimed by him.

Smith's survey was not satisfactory to the appellee, who filed a pleading in which he stated that he was having a correct survey made by R. W. Shreve. It turned out, however, that Shreve's survey was even more favorable to the appellants than Smith's had been. The appellee then abandoned his reliance upon the Shreve survey and shifted to an assertion that by adverse possession he had acquired title up to the line that he had first relied upon. At this point in the case the chancellor ruled that the October consent decree did not contemplate that the parties would be irrevocably bound by the report of the surveyor employed pursuant to the decree. The chancellor decided to view the lands himself, and after doing so he fixed a line that begins at the southern end of a fence between the lands and runs due north for 1320 feet. While this line follows neither the fence nor either one of the surveys, the final decree recites "that it would be equitable" so to fix the boundary. Both parties objected to the decree, and an appeal and cross appeal were taken.

We may lay aside the testimony concerning the appellee's adverse possession, for by his failure to file a brief in this court he has abandoned his cross appeal. *Dunham* v. *Phillips,* 154 Ark. 87, 241 S. W. 361. The issue in the case was clearly defined by the consent decree. In effect that decree was an agreement that the parties would accept the true boundary line as established by a competent surveyor. We think that the submission of the matter to a surveyor implies that the line is to be fixed with reference to the United States survey, from which the land descriptions themselves are derived.

We cannot approve the trial court's procedure in fixing the boundary line upon equitable considerations

rather than upon a surveyor's measurements. In matters affecting the title to land it is of the first importance that the law should achieve the greatest possible degree of certainty—a goal that can hardly be attained if boundaries are to depend upon the conceptions of equity held by the various courts. Here the parties agreed to determine the true line. That agreement narrows the issue to a matter presenting little difficulty. W. C. Smith's discovery of existing monuments that tie in perfectly with recognized section corners is the most convincing fact in the record. If necessary we should accept Smith's testimony in preference to the rather vague report made by Shreve, but we need not make a choice. The appellants ask only that the line be established according to Smith's findings, even though Shreve's survey is more favorable to them. We think they are entitled to what they ask.

The decree is reversed and the cause remanded for the entry of a decree consistent with this opinion.