### GRAY v. KING et al.
### No. 9848.

Court of Civil Appeals of Texas. Austin.

Feb. 15, 1950.

Rehearing Denied March 8, 1950.

Paul Petty, and E. C. Grindstaff, both of Ballinger, for appellant.

Geo. W. Leonard, Jr., and Eldon Mahon, both of Colorado City, for appellees.

ARCHER, Chief Justice.

This is a suit in trespass to try title. It was filed by E. W. Gray, on November 10, 1948, against A. F. King, M. B. King, Carl King, Arthur Malone, E. C. Grindstaff, and Homer Wood, for recovery of title and possession to a tract of 220.25 acres of land in Runnels County, Texas. The defendants were owners of land adjacent to Gray's tract. The only parties contesting the suit were the Kings, because, upon investigation, it became apparent that if Gray's farm contained 220.25 acres, approximately 20 acres had to come from the King tract. The three King brothers who were named as defendants in the plaintiff's original petition pleaded not guilty, and then they, with the joinder of all parties owning an interest in the King tract, brought a cross-action against all persons owning an interest in the Gray tract, for recovery of title and possession of a 19.54-acre tract along the south side of the King farm.

E. W. Gray and his children answered with pleas of not guilty and the three, five, ten and twenty-five year statutes of limitation. Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. M. J. Florance, a cross-defendant, was dismissed from the case without prejudice.

The case is before us on four points assigned as error.

By their first point appellants allege error by the court in overruling their motion for a directed verdict; the second in overruling motion for judgment non obstante veredicto; by the third in overruling motion for a new trial; and by the fourth in overruling motion for a new trial because the verdict of the jury is against the weight and preponderance of the evidence.

The court submitted only one issue to the jury, inquiring whether the appellants (the Gray family) had ten years adverse possession of the land. The jury answered this issue in the negative; and based on

the jury's answer the court entered judgment for the appellees (the King family).

The only dispute between the parties hereto was over a strip of 19.54 acres lying south of a fence.

The field notes of the King 315.41 acres call for a beginning corner as a stone mound, etc., from which a mesquite 9 in. in dia. bears south 73¾ degrees west 31 vrs.; thence south with west line of Block No. 38, 1340.92 vrs. to a stone mound for northwest corner of a 200-acre tract. The field notes for the Gray 200-acre tract begin at the southeast corner of Section 39; thence west, etc.; thence north parallel with the west line of said Block No. 40, 854.8 varas to a stone for the southwest corner of a 315.41-acre tract owned by J. L. King; thence east with south line of said King tract 1327.7 vrs. to a stone, etc.

No mention is made of a fence in either of the field notes to the two tracts of land. The stone mounds called for in the deeds were not found by Surveyor Simpson.

It is undisputed that the 19.54-acre tract is outside of the called field notes of the 200-acre tract and within that of the 315.41-acre tract. The fence is 94 vrs. north of the course and call distances for the 315.41-acre tract on the east side and 72.2 vrs. on the west side.

"The rules for ascertaining boundaries are invoked only when the calls of an instrument are inconsistent or lead to different results; if there is no conflict in the calls found in the field notes, or if there is no conflict in the calls in the deed and those found upon the ground, but a perfect coincidence, there is no necessity for resorting to rules of construction and the calls speak for themselves." 7 Tex.Jur., 121.

"The rule is thus stated by Chief Justice Gaines in Thompson v. Langdon, supra [87 Tex. 254, 28 S.W. 931]: 'The lines of a grant must be established by the calls in its field notes. If those calls are inconsistent, then certain rules of construction and even parol evidence may be resorted to in order to resolve the doubt and to establish the line which was actually run by the surveyor. It is but a case of a latent ambiguity in a written instrument. A writing unambiguous upon its face may become doubtful when applied to the subject-matter of the description. On the other hand, if there be no conflict in the calls found in the field notes of a survey, there is no room for construction, and the calls must speak for themselves." Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629, 632.

We believe that the evidence as a whole raised an issue of fact as to the application of the ten-year statute of limitation, and that the court was justified in refusing to direct a verdict for the appellants.

We overrule the appellants' second assignment of error of the court in overruling a motion for judgment non obstante veredicto.

The court submitted only one issue to the jury, inquiring whether appellants had ten years adverse possession of the 19.54-acre tract of land, and the jury answered they had not.

The testimony of the plaintiff that the land lies outside of King's fence, and that it was inclosed by Gray's fences, and that he had possession, cultivated, pastured and claimed it as his own for more than ten years, raises a question of fact, but it is not conclusive, because the claimant is an interested witness.

"As to the ten-year statute, it is stated in Texas Jurisprudence that: 'In the situation which commonly is presented, the issues in cases of this class are for the jury's determination. The testimony of the claimant that he had been in possession of the land under an adverse claim of more than ten years raises a question of fact, but it is not conclusive, because the claimant is an interested witness.' 2 Tex.Jur., 233, § 127." Epps v. Finehout, Tex.Civ. App., 189 S.W.2d 631, 632.

In the case of Chittim v. Auld, 219 S. W.2d 702, 704, we have facts and circumstances not in this case. In the Chittim case Mary Wilson conveyed a "'Half interest in and to my wire fence, which fence * * *, is situated and runs along or near the line of Survey No. 23 * * *.'"

Each party was to keep the fence in repair on alternate years.

We, therefore, do not believe that the 19.54 acres became the property of Gray as a matter of law.

The jury having heard the witnesses and being the exclusive judge of the credibility and weight to be given their testimony, and having resolved the facts in favor of appellees, ordinarily we would not be justified in disregarding the jury verdict.

In Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017, 1018, the court said: "The Sturtevants were interested parties, and the rule is well established that jurors are not required to accept the testimony of such witnesses as true merely because it is not directly or expressly contradicted by other witnesses."

In Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453, 456, the court held: "Doherty contends that the evidence in this case entitles him to a judgment awarding him the title and possession of this land because it shows conclusively that Pearson did not claim adversely as against the true or real owner, and therefore shows that Pearson has not acquired title by the Ten Year Statute of Limitation. We overrule this contention. In our opinion the evidence contained in this record raises a fact issue on the question of adverse claim and possession. It is true that Pearson, in his deposition taken before the trial, stated that he was not trying to take this land away from those who owned it; but at the trial itself Pearson testified that since 1925 he had never acknowledged that any other person than himself owned this land, and that since 1925 he had always claimed it for himself. The record in this condition presents a fact question. Stewart v. Luhning, 134 Tex. 23, 131 S.W.2d 824; O'Meara v. Williams, Tex.Civ.App., 137 S.W.2d 66."

When we come to consider the testimony offered by the appellees as cross-plaintiffs, in support of their pleadings, as well as statements allegedly made by some of the appellants against interest, there is not found that character and sufficiency to support the judgment of the court, and the jury's verdict is against the great weight and preponderance of all of the competent evidence as manifestly to be wrong, and the trial court should have set aside such finding and ordered a new trial.

On cross-examination E. W. Gray testified:

"Q. You don't know when Mr. King died. Now then, did you ever tell Mr. King that you thought this excess might have come off his farm? A. No, sir.

"Q. You never did claim any title to any of King's land did you? A. No, sir.

"Q. And you are not claiming title to any of it now, are you? A. No, I didn't know whose it was.

"Q. If it is King's land you don't want it, isn't that a fact? A. No.

"Q. What did you say? A. No, sir.

"Q. If it is your land you do want it, isn't that correct? A. Right.

"Q. In other words, you want what is yours and you want King and the King heirs to have what is theirs, isn't that right? A. I claim the paying taxes on it and everything gives me a title to it.

"Q. In other words, you want part of the King's if you got it by limitation? A. Well, I didn't know who it is from. I had somebody's and I had to take it somewhere.

"Q. You had to take it somewhere or other? A. I say, somewhere or other."

A. F. King testified as to conversation with Jack Gray:

"Q. What was said in that conversation? A. Well, I don't know that I could quote all the words verbatim, but I can give you the substance of the conversation. I told Jack that apparently we hadn't had any official survey apparently; he knew the way my brother chained that tract we were about twenty acres short and it occurred maybe our land was over on with their enclosure and he said, well, he didn't know, that if we were twenty acres short that that land might belong to us, it didn't belong to them; that's in effect what he said; I don't know that that's the exact words; in effect that's what he said.

**876**

"Q. Was there anything else said at that time? A. Yes.

"Q. What was that? A. He asked if we would move the fence.

"Q. Did he say which way? A. Well, presumably over where our callings would be for our land, presumably; he didn't say which way; I would understand it would be back on the Gray side, of course, from the conversation.

"Q. And what did you tell him? A. I told him we would.

"Q. Did you have any further conversations? A. My memory is that: I believe that Jack, as I recall, mentioned something about splitting the land or dividing the acreage in there, the excess, whatever it was, the acreage in dispute, and I told him that would be a matter we would have, you know, have to be considered and thought about, * * *."

"Q. Did he talk to Mr. Witter in your presence? A. No, Mr. Witter was in his car and I didn't hear the conversation.

"Q. You just saw them talking? A. Yes. After he talked to Witter a little while he turned around and stepped over where I was. I was at one of those columns immediately in front of the Central Hotel and he told me, he says, 'We have leased that land and my hands are tied and there isn't anything I can do about it.' "

These negotiations occurring, as they did, after the suit had been filed, amounted to no more than an effort to compromise controversy, and did not show want of adverse possession prior thereto. Catching v. Bogart, Tex.Civ.App., 138 S.W.2d 245, Writ Ref.

Jack Gray testified that he assisted J. L. King in placing a corner post at the northwest corner in 1917, and at that time Mr. King told him that the post was just over 3 inches on the King land; that he talked to August King and Carl King about the land.

"If the jury should resolve any such issue so clearly against the overwhelming weight and preponderance of all the competent evidence in the case as manifestly to be wrong, then the trial judge may—and upon seasonable motion of the aggrieved party should—set aside such finding and order a new trial". Casey v. Jones, Tex. Civ.App., 189 S.W.2d 515, 517, Writ Ref.; Bolton v. Lann, 16 Tex. 96.

The judgment of the trial court is reversed and the cause remanded for a new trial.