268 P.2d 674

MACKEY v. BLAKELY OIL, Inc.

No. 5794.

Supreme Court of Arizona.

March 29, 1954.

Rehearing Denied April 20, 1954.

Lewis, Roca & Scoville, by Walter Cheifetz, Phoenix, for appellant.

Langmade & Sullivan, Phoenix, for appellee.

UDALL, Justice.

This is an action in forcible detainer brought by plaintiff-appellee, Blakely Oil, Inc., to recover possession of a service station on the Mesa-Tempe highway known as "Blakely's Station No. 7". A verdict was directed against defendant Webber Mackey, and from the judgment entered thereon he appeals. Herein we shall refer to the parties as plaintiff and defendant.

Where the trial court has directed a verdict, upon appeal we must take the facts in the light most favorable to the party against whom such verdict was directed, because the motion for directed verdict admits the truth of whatever competent evidence the opposing party has introduced and the reasonable inferences to be drawn therefrom. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201; Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881.

The record shows that in the fall of 1949 Monroe Blakely and defendant had various business dealings, and together owned or operated several service stations in Arizona. R. S. Attaway and W. C. Attaway were the original owners of the premises involved in this suit, which they made suitable for the operation of a gas station, and Blakely was negotiating with them to secure a lease of these premises. On January 4, 1950, these negotiations culminated in a written lease wherein Blakely and his wife are named as lessees and Attaways are named as lessors, for a term of ten years, and at a rental of one cent on each gallon of gasoline sold at the station. Defendant lawfully, peaceably, and with Blakely's consent, entered into possession of the premises and began operating the station on January 4, 1950. Defendant did not then have any agreement in writing

defining his right to possession. It is defendant's position that he entered as the oral assignee of Blakely's full term, and thus was the tenant of Attaways and not the tenant of Blakely. It is plaintiff's position that defendant entered as tenant at will of Monroe Blakely. We shall treat this point in greater detail hereinafter. Defendant always paid the rent directly to the Attaways, and he also paid the utility charges and insurance premiums besides making certain improvements upon the premises.

During the course of operation of the station, defendant purchased his gasoline from Texas Independent Oil Company, which was the wholesale supplier of gasoline for all service stations operating under the name "Blakely's". For each gallon of gasoline sold at the station, defendant paid Blakely the sum of one cent in return for the privilege of using the Blakely name and participating in the Blakely advertising and sales promotion campaign.

In the summer of 1950 Monroe Blakely formed the corporation which is plaintiff here (Blakely Oil, Incorporated) and made a written transfer to the corporation of the ten-year lease from Attaways—the latter assenting to this assignment. In January, 1951, the corporation was activated, and Monroe Blakely then informed defendant that for Blakely to effectuate the change-over from individual to corporate form of doing business it would be necessary for defendant to sign certain papers.

In the trial court defendant took the position that Blakely by actual or constructive fraud induced him to sign the papers without reading them, but the evidence clearly shows that nothing Blakely said or did prevented defendant from reading them and he was fully able to have read them had he cared to. One of these papers is a lease, captioned "Use and Occupancy Agreement", two paragraphs of which we here set out haec verba:

"Blakely Oil, Incorporated, a corporation, hereinafter called 'Company', is the lessee of the premises located at Mesa-Tempe Highway, and is known as Blakely's Station No. 7, and, by this agreement, it hereby gives to Webber Mackey, hereinafter called 'Operator', the use and occupancy of the above described premises, subject to the following terms and conditions:

*    *    *    *    *    *

"Operator shall not make any additions, alterations, rearrangements or improvements to the property leased hereunder, or remove any of the same from the said premises, without the Company's written prior approval."

This lease was subject to termination by either party by giving twenty-four hours' written notice. Apparently it was "understood," but not spelled out in any agreement, that defendant was to continue pur-

chasing gasoline from the wholesaler who supplied other Blakely stations, and was to continue participating in the Blakely advertising campaign.

Defendant, in late October, 1952, quit buying gasoline from plaintiff or the Texas Independent Oil Company and found his own supplier in New Mexico. On December 13, 1952, plaintiff served upon defendant written notice that the use and occupancy agreement was terminated and that possession of the premises was demanded. Defendant refused to vacate, and on December 27th this action was instituted to recover possession. The case was tried to a jury and resulted in the trial court's directing a verdict and entering judgment for plaintiff, from which this appeal was taken.

Defendant's sole assignment of error reads:

"The trial court erred in granting plaintiff's motion for a directed verdict and in ordering judgment thereon for the reason that the trial of the cause created an issue of fact required to be submitted to the jury to determine the guilt or innocence of defendant of forcible detainer."

A more complete exposition of defendant's theory of the case is helpful at this point. He contends: that at some unstated time during the fall of 1949, while Monroe Blakely was negotiating the ten-year written lease from Attaways, Blakely orally contracted to assign this lease, when made, to defendant; that when the lease was made it was orally assigned to defendant who received thereby the whole unexpired term of the lease, thus becoming the tenant of Attaways rather than sublessee and tenant of Blakely, relying upon the rule stated in 32 Am.Jur., Landlord and Tenant, Sec. 313; therefore, he contends the plaintiff corporation received nothing by its assignment from Blakely, which in turn means the use and occupancy agreement fails for lack of consideration inasmuch as the purported lessor (plaintiff) did not and could not deliver possession as agreed and defendant did not procure or acquire possession under or through that agreement, see on this point Clark v. Holcomb, 31 Ariz. 378, 383, 253 P. 897; and Gibbs v. Basham, 53 Ariz. 357, 364, 89 P.2d 630.

The court, before instructing a verdict, gave the defendant every opportunity to establish his defense of fraud, either actual or constructive, but the proof wholly failed. The evidence compelled the conclusion defendant was grossly negligent in signing the lease without reading its terms. In fact, the fraud angle is not urged on this appeal. Under these circumstances we believe the trial court was fully justified in holding this use and occupancy agreement to be binding. The parties therein agreed that the relationship of landlord and tenant existed between them, but, defendant now seeks to attack plaintiff's title to the leasehold estate as it existed at the time of executing the use and

occupancy agreement, and asserts plaintiff had no title to the leasehold and so could not then give possession or allow defendant to keep it. This he is estopped to do. 51 C.J.S., Landlord and Tenant, § 268. Defendant by signing this agreement in effect abandoned his presently asserted claim that he was Attaways' tenant and not Blakely's or plaintiff's. The contention of lack of consideration thereby falls.

It is our conclusion that as a matter of law defendant adduced no evidence upon any issue which could be submitted to the jury, hence the learned trial court correctly disposed of the case.

Judgment affirmed.

PHELPS, C. J., and STANFORD, LA PRADE, and WINDES, JJ., concurring.