348 P.2d 301

**J. F. McNEIL and Emma L. McNeil, husband and wife, Appellants,**

**v.**

**W. C. ATTAWAY, Cora Attaway, and R. S. Attaway; Webber Mackey, Marjorie Mackey, and Blakely Oil Co., Inc., a corporation, Appellees.**

**No. 6492.**

Supreme Court of Arizona.

Dec. 23, 1959.

Supplemental Opinion on Rehearing Jan. 20, 1960.

Rawlins, Davis, Christy, Kleinman & Burrus, by Chester J. Peterson, Phoenix, for appellants.

Wilmot W. Trew, and Langmade & Sullivan, Phoenix, for appellees.

UDALL, Justice.

This is an appeal by J. F. McNeil and Emma L. McNeil, his wife (hereinafter called plaintiffs), from a judgment in favor of defendants decreeing that plaintiffs take nothing in their action to quiet title and that their complaint be dismissed, and from the court's order denying a motion for new trial.

The *Essential* facts—controlling in a determination of this appeal—are not in dispute and may be succinctly summarized as follows: On January 13, 1948, Frank A. Carney, et ux. by warranty deed acquired title to a 20-acre tract described as the

"East half of the Northwest quarter of the Southeast quarter of section nineteen, Township one (1) North, Range five (5) East, G. & S. R. B. & M."

(*Note*: The deed was given subject to various easements and reservations set forth therein—none of which are material to the issues in the instant suit.)

The northern boundary of the tract fronts the main highway between Tempe and Mesa, known as "The Apache Trail". At the time the land was purchased by Carney it was unimproved acreage used for growing crops. The Nace Drive-in-Theatre property adjoined it on the East, and tracts owned by Mendoza and Cota (the former's son-in-law) adjoined it on the West. There were then fences on three sides, i.

e., North, East, and West. Apparently, without a survey being made, parties had previously erected the East and West fences referred to, supra.

The Carneys were not averse to "making a profit" on their land investment, and hence very shortly after acquiring the tract in question—and without having fenced or placed any other improvements thereon —they listed the property for sale with a realty firm with instructions to offer it for sale in four strips, each to contain a 165-foot frontage on the main highway and thence running to the Southern Pacific Railway Company's right of way on the South. Each tract would thus contain approximately five acres.

Such tracts were sold by the real estate salesman and deeded by Carney in the following order. (We shall use the numbering as testified to by the various witnesses and as shown on plats in evidence.)

### Tract No. 1

"The West 165 feet * * *" was sold to plaintiffs (McNeil), recorded deed of conveyance being dated January 12, 1949. This tract, which adjoins the Mendoza-Cota lands to the West, is not embraced in the instant suit and no reference is made to it either in the complaint or judgment.

### Tract No. 2 (The land involved in this lawsuit)

Specifically described as:

"The East 165 feet of the West 330 feet, of the East half of the Northwest quarter of the Southeast quarter of section Nineteen (19) * * *." (Township and Range, plus easements and reservations as shown in the grantor's deed, supra)

was sold to plaintiffs, deed of conveyance dated October 11, 1949.

### Tract No. 3

"The East 165 feet * * *" strip was sold to Charles Nealy, and he later conveyed to a Mr. Cameron. This tract adjoins the Nace Drive-in-Theatre lands on the East. This area is not involved in any way in the instant suit.

### Tract No. 4

"The East half of the Northwest quarter of the Southeast quarter of Section Nineteen (19), Township One (1) North, Range Five (5) East, of the Gila and Salt River Base and Meridian, Maricopa County, Arizona; * * * * Except the East 165 feet; and Except the West 330 feet"

was sold to defendants W. C. Attaway, his sister and brother; later they conveyed to defendants Webber Mackey, et ux., who in turn leased a portion of the tract to defendant Blakely Oil Co., Inc., for the operation of a service station. See, Mackey v. Blakely Oil, 77 Ariz. 169, 268 P.2d 674, for a recitation of their interests. Insofar

as this appeal is concerned all of the parties just referred to (who are the appellees-defendants) stand in the shoes of the Attaways and they shall hereafter be referred to merely as defendants. This tract is not directly involved in the instant litigation.

In passing it should be noted that neither Carney (the common grantor) nor any of the purchasers of the four tracts, supra, at that time went to the trouble or expense of having the lands purchased by them surveyed to establish the lines specifically called for in their deeds; had they done so all of the present difficulties could have been avoided. The whole trouble now arises from the fact that the Northeast corner of the East boundary fence of the Mendoza-Cota property lies approximately 16½ feet west of the true boundary line thereof, and in the beginning a stake there was erroneously assumed by the salesman to be the correct starting point for the first working measurements. Carney, in connection with the four sales, did not personally go onto the property to show the parties the boundaries of the lands being purchased by them.

A dispute later arose between plaintiffs and defendants as to the true boundary line between tracts numbered 2 and 4, supra. This caused each of the parties, in the year 1952, to have a separate survey made of their properties by the competent civil engineering firm of F. N. Holmquist. The system followed by the engineer was that set forth in the Manual of Surveying used by the United States General Land Office. Established government corners were found to have been previously monumented at the northeast, the southeast and the southwest corners of the quarter section in which these lands lie. Therefore, no difficulty was experienced by the engineer in surveying out and platting the land called for in their respective deeds covering said tracts. See, 26 C.J.S. Deeds § 30-a. In establishing the common boundary line between tracts 2 and 4, supra, it was disclosed that defendants in the northwest corner of their purported holdings were encroaching—with service station facilities—a distance of approximately 16½ feet in width over on to plaintiffs' land in tract 2, which encroachment extended to a depth of approximately 150 feet. Incidentally the survey showed that defendants' tract 4—following the description set out in the deed—actually had a frontage of 165.08 feet on the north. Engineer Wier, of the Holmquist firm, testified without contradiction that there was not a single fence in the area on the lines called for in the various deeds.

Fortified with this survey, the plaintiffs first made demand—under the provisions of A.R.S. § 12–1103—that defendants execute a quit claim deed to the disputed strip, and when this was refused they filed, on April 30, 1953, a complaint against defendants to quiet their title to the lands described in tract No. 2, supra. In a second cause of action they prayed for immediate possession

thereof, costs and attorney's fees, plus a reasonable sum as rental for their property then being used and possessed by defendants. Later a supplemental amended complaint was filed naming as a defendant the Blakely Oil Co., Inc., which corporate entity had previously intervened in the case. Defendants answered and by counterclaim asked that title to the disputed strip be quieted in them, or in the alternative for reformation of the instruments of title.

After a trial to the court, sitting without a jury, the court expressed regret that he did not have the common grantor and other parties owning land in the area before him as parties to the suit so that he might reform all of their deeds. Nevertheless judgment was entered dismissing plaintiffs' complaint, establishing a dog-legged division line between the properties of the parties hereto, and entering judgment on the counterclaim in favor of defendants, quieting their title to the disputed strip of plaintiffs' lands on the basis of the new boundary line established by the decree.

The assignments of error are to the effect that the judgment (a) is not supported by competent evidence, (b) is contrary to law, and (c) the court was without jurisdiction to establish by judicial fiat a common boundary line between the properties of the parties.

The basic legal issue presented by this appeal is whether the judgment is legally reconcilable with the crucial facts, referred to in the motion for judgment made by plaintiffs' counsel at the close of all of the evidence, viz.:

"The evidence is uncontradicted that the boundary lines, the government quarter section corners, were known to exist, that they were not obliterated or destroyed. The testimony further shows that the deeds which conveyed the property to Mr. McNeil are unambiguous, the physical survey made by competent surveyors shows beyond a doubt that the property as described in parcel No. 2 is being encroached upon by parcel No. 4 approximately 16½ feet."

For the reasons hereinafter stated, it is our considered opinion that the trial court erred in not granting said motion.

Before proceeding to a detailed determination of the merits, it might be helpful to point out some things which are *not* involved in this suit. This is not an action to quiet title to land acquired by adverse possession, for less than four years elapsed from the sale by Carney of the four parcels until the date the quiet title action was filed. Neither is this a proceeding to conform a deed to an agreed boundary line, since the parties herein admittedly never arrived at an express agreement as to the line dividing their properties; furthermore, there is no privity of contract between them

upon which such an action could be based. For the same reason—lack of privity of contract—this is not properly a suit to reform a deed or deeds, as will be shown, infra. Nor is this a case where the true line—called for in the deeds—is doubtful or uncertain.

The trial lasted the better part of a week, and the reporter's transcript of the proceedings covers 444 pages. In our opinion the evidence ranged "far afield", much of it being wholly irrelevant and immaterial to the real issue presented. We are unable to perceive—as a matter of law—how boundary or fence lines of Mendoza-Cota to the West, or those of the Nace property to the East, or any other lines except that affecting lots 2 and 4, have any bearing on our problem. Certainly such evidence could only have been offered for the purpose of varying the express terms of the recorded deeds to the property here involved, i. e., to show that the clear language of those deeds did not accurately describe the property conveyed. Plaintiffs' objections to this type of evidence—based on its irrelevance and on the fact that it was in violation of the parol evidence rule—were overruled.

█ The parol evidence rule, briefly stated, is a prohibition against the admission of extrinsic evidence which would vary the terms of a properly executed written instrument. Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360. We have held that this is a doctrine of substantive law, not merely an exclusionary rule of evidence. Diamond v. Chiate, 81 Ariz. 86, 300 P.2d 583; City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411; Carrillo v. Taylor, 81 Ariz. 14, 299 P.2d 188.

In spite of the parol evidence rule, appellees contend that the "understanding" of these parties based on "visual inspection" as to the boundary lines must govern, even though the alleged understanding would contradict the clear descriptions contained in the deeds. We are aware of no exception to the rule which would justify such a conclusion.

█ Parol evidence, in a situation such as this, is allowed solely for the purpose of resolving ambiguities in written instruments. Although this is generally considered an exception to the parol evidence rule, analytically it is not such, since evidence admitted for this purpose does not vary the terms of the instrument, but rather it aids the court in the proper interpretation of those terms. Here, however, no ambiguity exists. The description in a deed of the property conveyed thereby is considered ambiguous and subject to construction only if it is not possible to relate the description to the land without inconsistency. Gray v. King, Tex.Civ.App., 227 S. W.2d 872. Extrinsic evidence is admitted to resolve ambiguities, not to create them.

Parol evidence is also admitted in an action to reform a written instrument, for the purpose of proving the content of the pre-existing express agreement of the parties to the instrument. See, Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751. Proof of such anterior agreement is essential in a reformation action, since the purpose of such action is to conform the instrument to the actual contract negotiated by the parties. In a suit to reform a written instrument a clear and convincing showing of the real agreement of the parties thereto is a requisite. Corn v. Branche, 74 Ariz. 356, 249 P.2d 537; Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78; Bailard v. Marden, 36 Cal.2d 703, 227 P.2d 10. Reformation is not—and cannot be—involved in this case, since the parties herein have never entered into any express or implied agreement which could be reformed. See 45 Am.Jur., Reformation of Instruments, sections 45, 46, and 49; 76 C.J.S. Reformation of Instruments § 18.

Berger v. Bhend, supra, so strongly relied upon by defendants involved a prayer for reformation of a deed to conform to the parties' understanding that a certain ditch running between their properties had —for some fifty years—constituted the true boundary line. In that case we reversed the trial court's judgment denying reformation, since we found no evidence to support the trial court finding that "There was no ex-

pressly agreed boundary line." 79 Ariz. 180, 285 P.2d 756.

We recognize that when, as in Berger v. Bhend, a boundary line is actually agreed upon by adjoining landowners, and when—as there—all necessary parties were joined in the suit, a deed may be reformed to conform to the true intention of the parties. However, that is not the case here. At the time of the conveyances from Carney to McNeil and to Attaway this was an open field; there was nothing on the land to indicate any boundary line other than that described in the deeds. There was no physical feature which could have been agreed upon by the parties to establish the disputed line. Under such circumstances the clear and unambiguous language of the deed must govern. See 11 C.J.S. Boundaries § 74.

There is a wealth of authority for the proposition that the description of property as set forth in "the call of the deed" is controlling. Joerger v. Pacific Gas & Electric Co., 207 Cal. 8, 276 P. 1017; Buie v. Miller, Tex.Civ.App., 216 S.W. 630; Frost Lumber Industries of Texas v. Brantley, Tex.Civ.App., 109 S.W.2d 999; Oliver v. Oliver, 187 Ala. 340, 65 So. 373; Hirsch v. Fisher, 278 Mass. 492, 180 N.E. 230; Daniel v. Tallassee Power Co., 204 N.C. 274, 168 S.E. 217; Peavey v. Moran, 256 Mass. 311, 152 N.E. 360; Spencer v. Pierce, 172 Ark. 108, 287 S.W. 1019; Wilson v.

Cooper, 256 Ala. 184, 54 So.2d 286; Krick v. Thompson, 349 Mo. 488, 162 S.W.2d 240. See also 26 C.J.S. Deeds § 100a.

A few quotations from the cases cited above will indicate the emphasis which courts in other jurisdictions have placed upon this point. In the Joerger case, supra, the California court, dealing with a similar boundary dispute, said:

"* * * No principle of law is more well established than that nothing passes by deed except what is described in the grant. * * *" 276 P. 1017, 1028.

The Texas court, in the Frost Lumber Industries case, supra, said (109 S.W.2d at page 1001):

"* * * Parol evidence cannot make a deed convey land that it does not purport to convey, nor prevent it from conveying that which it does clearly purport to convey. That would be to contradict or vary the writing. * * *"

and in Buie v. Miller, supra (216 S.W. at page 633):

"It is well settled that nothing passes by deed except what is described in it, whatever the intention of the parties may have been.

"While parol evidence if often admissible to ascertain what lands are embraced in the description, such evidence cannot make the deed operate upon land not embraced in the descriptive words. * * *"

In the Oliver case, supra (65 So. at page 375), the Alabama Supreme Court said:

"Plaintiff's theory of the case seems to be that any recognition by former owners of the two tracts of a 'made line', wherever it might be, was binding upon them, although their respective deeds and titles were based on the lines of the government survey, and regardless of the absence of an adverse possession up to such line.

"This is not the law, for recognition by adjoining owners of a false line as the boundary between them is without effect, unless the party claiming beyond the true line also holds hostile possession up to the false line until the bar of the statute is complete. * * *"

Chief Justice Rugg, speaking for the Massachusetts Supreme Judicial Court in Hirsch v. Fisher, supra, wrote (180 N.E. at page 231):

"The general rule is settled and familiar that, when the description of granted premises in a deed is clear, extrinsic evidence is not admissible to control or modify it. It is only when such description is uncertain through latent ambiguities, either in the meaning of the words or in their application to the face of the earth, that resort

may be had to such evidence to resolve existing obscurities. * * *"

And finally, quoting the Supreme Court of North Carolina in the Daniel case, supra (168 S.E. at page 219):

"* * * Parol evidence is not admissible 'to fit the description to the thing,' when the calls in a deed are unambiguous and the lines sought to be established differ entirely from those in the deeds."

In the instant case the lower court erred not only in admitting evidence intended to vary the unambiguous terms of the deeds, but also in attempting to rewrite the descriptions in those deeds in terms never agreed upon by the parties thereto. In Salsbury v. Oliphant, 216 Ark. 190, 225 S. W.2d 329, where the trial court had, by decree, set boundary lines never envisioned by the landowners, the Arkansas Court said:

"We cannot approve the trial court's procedure in fixing the boundary line upon equitable considerations rather than upon a surveyor's measurements. In matters affecting the title to land it is of the first importance that the law should achieve the greatest possible degree of certainty—a goal that can hardly be attained if boundaries are to depend upon the conceptions of equity held by the various courts. * * *" 225 S.W.2d 329, 330.

We agree with this statement and hold that the court below erred in departing from the unambiguous descriptions contained in the deeds. It would be most dangerous to the stability of land titles to hold otherwise.

Judgment reversed and cause remanded with instructions to enter judgment as prayed for in the supplemental amended complaint, i. e., quiet title in the plaintiffs in conformity with their deed; fix a reasonable sum as rental for the property encroached upon by defendants and for an attorney's fee and costs. Also with directions to determine the cross-complaint of Blakely Oil Co., Inc. against the other named defendants.

Judgment reversed with directions.

STRUCKMEYER, JOHNSON and BERNSTEIN, JJ., concur.

PHELPS, Chief Justice (dissenting).

I cannot agree with the majority opinion. Appellants claim the judgment of the Court is not supported either by the evidence or the law and that the Court was without jurisdiction to establish a common boundary line between the McNeils and the Mackeys (successors in interest to the Attaways). I agree that the Court was without authority under the pleadings to establish a boundary line between the McNeils and the Mackeys. But I think its findings of fact herein set out haec verba and its judgment otherwise were amply justified by the evidence, and I do not think

the majority members have given said evidence the legal effect to which it is entitled; nor that they have fully stated the pertinent facts in the case.

The Court made the following findings of fact which were assigned as error claiming that it was not supported by either the evidence or the law.

"* * * All of the persons in that area purchased based upon visual inspection including existing fence lines and property pointed out as being the property then being purchased.

"* * * Mr. Carney, the common grantor of the parties to this action, bought his land in 1948 based upon a visual inspection and bought using the same fence as his westerly boundary. He so informed his realtor and the realtor so informed the plaintiffs and the defendants and so sold to the plaintiffs and the defendants and the plaintiffs and the defendants so purchased and so occupied. All of the sales from Mr. Carney were on the same basis.

"All of the purchasers purchased relying upon visual inspection and without reference to the descriptions contained in the deeds, which descriptions were compiled in the escrow office of the Title Company where the property was being escrowed.

"Each person buying from Mr. Carney in fact secured the land that he bargained for, the frontage that he bargained for and the land which said purchaser anticipated receiving."

The issues presented therefore must be determined from a review of all the evidence in the case which must be construed in a light most favorable to sustaining the judgment of the trial court. It is my purpose therefore to fully state the pertinent facts in the case in order, if possible, to make my position clear.

The facts are that Frank A. Carney, et ux, early in 1948 acquired title to a 20-acre tract of land described according to government survey, which is correctly stated in the majority opinion. However, the evidence is that Mr. Carney at the time he purchased said tract of land had pointed out to him by the real estate agent, the old fence line on the west side thereof with the statement that this was the west boundary line of the property he purchased; that he believed he was purchasing property bounded on the west by the old fence line and by fences then on the north and east thereof, and by the railroad right-of-way on the south. He received the deed thereto later and did not know at anytime either before or after receiving the deed that the legal description therein did not correspond with the fence lines on the west, east and north sides of said property and had no reason to believe otherwise.

Mr. Carney decided to sell said property in five-acre strips of 165 feet frontage on

the Tempe-Mesa Highway and instructed Mr. Dean, an agent of the real estate firm through which he had purchased the property, to sell it in that manner and to first sell the 165 feet strip along the west side of said property. The original contract between Carney and the purchasers and the real estate firm called for 165 feet frontage by 1,320 feet in depth. This is true of all tracts thus sold except the last one which was sold to the Attaways. Carney had learned by measuring it that the area between the east and west fences was a little over 660 feet. He therefore instructed the real estate agent that the deed to the Attaways should provide for 165 feet frontage more or less. None of the original descriptions of the land were followed by the Title Company. Carney further testified that he intended to sell the land between the east and west fences and that he taped it off from the marker (iron pipe) on the northwest corner of the property which was fairly close to the west line fence. He said he intended to sell to the Attaways all the remainder of the land after deducting 165 feet on the east and 330 feet on the west which he had sold to the McNeils. He stated he didn't want any land left upon which to pay taxes and that is the reason for the instruction that the deed to the Attaways should read 165 feet, more or less, in width.

The undisputed evidence is that the fence on the west side of the property purchased by Carney was an old fence; that it was in the same location at least as far back as 1935. Mrs. Cota, daughter of Ramon S. Mendoza, who owned the 20-acre tract immediately west of the property purchased by the McNeils from Carney, testified that her father purchased the property in 1941 and received title thereto in 1944 and the property had been in the family ever since; that she was 31 years of age when her father purchased the property immediately west of the McNeils and the fence was then an old fence, and it had been there in the same location as far back as she could remember. This would justify the conclusion that it had been in that location many years before 1935. It had, during all of those years, been treated by the predecessors of Mendoza and the McNeils as the legal property line between the east and west 20-acre tracts in the northwest quarter of the southeast quarter of section 19, township one (1) north, range five (5) east G&SRB&M, Maricopa County, Arizona.

Mr. McNeil testified that he had been acquainted with the land for many years in that he had passed by it many times but had never had any intentions of buying it until shortly before he and his wife did purchase it. This being true the fact could not have escaped even a casual observation by him that the fence had been in the same location for years. Dean, the real estate agent, pointed out to the McNeils the northwest corner stake from which they measured their 330 feet frontage along the

Mesa-Tempe Highway. Mr. McNeil testified as follows in response to questions propounded on cross-examination:

"Q. At the time you purchased, Mr. McNeil did you know this property was located in Section 19, Township 1 North, Range 5 East? A. I only knew it after I got my deed.

"Q. Did you know that this property was located in the east half of the northwest quarter of the southeast quarter of said Section 19? A. When I bought it?

"Q. Yes, sir? A. No sir, I didn't know it until I got my deed.

"Q. In other words, then at the time you purchased this property you did not know the legal description of the property? A. I did not.

"Q. And you did not buy on the basis of the wordage in your deed that described the property, did you? A. No, I just bought a piece of property and they give me a deed to it.

"Q. That is right. In other words, let's get this straight. You went out there and saw a piece of property on the ground, Mr. Dean, the real estate man, pointed it out to you, its general location, and you then and there purchased 165 feet and then purchased a few months later another 165 feet immediately east to it? * * * A. Yes, sir."

The above testimony of Mr. McNeil thoroughly establishes the fact that he relied entirely upon his visual inspection of said property for the purpose of identifying it as the exact property he intended to purchase, and the fact that he measured it from the iron stake on the northwest corner of said 20 acres which is fairly in line with the old fence line, establishes definitely the fact that he not only intended to buy the 330 feet frontage measured from said iron stake but that he did buy it. By the above measurement the McNeils received the 10 acres purchased by them. It seems to me these facts are so completely established that they cannot be refuted. It is equally clear that the McNeils have since treated the old fence line immediately west of them as the established property line between the two 20-acre tracts in the northwest quarter of the southeast quarter of said section 19. The fact that the McNeils went into possession and have occupied and used all of the property purchased right up to the old fence line irrefutably confirms their intent and their understanding as to the actual property they intended to purchase.

The reference in the majority opinion to a 4-year adverse possession is misleading. The west fence line had been established by operation of law as the boundary line between the McNeils and Mendoza and Cota by adverse possession for more than 20 years. Today it constitutes the legal

boundary line between the McNeils and Mendoza and Cota, the government survey to the contrary notwithstanding. Carney was not required to have it established by a judgment of a court until someone claimed otherwise. Manor v. Stevens, 61 Ariz. 511, 152 P.2d 133; Ford v. Clendenin, 215 N.Y. 10, 109 N.E. 124, 126, Ann.Cas.1917A, 658. The Mackeys were not in a position to interpose such a defense in the instant case and the McNeils, the only parties to the litigation who could raise it, did not do so, and for the purpose of this litigation is impliedly opposing it.

The majority say we are not concerned in this case with the west boundary line of McNeils' property; that we are only concerned with their east boundary line between them and the Mackeys. They ignore the fact that the McNeils originally established their east boundary line by measuring 330 feet from the iron pipe on the northwest corner of the property substantially in line with the west line fence. According to Manor v. Stevens, supra, the old fence line on the west of their property was then and is now actually the legal west property line.

It is clear to me that the McNeils now own and possess the identical 10 acres of land they intended to buy and did buy from Carney. The case of Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751, and the cases therein cited fully sustain this view. There is a marked similarity in the facts of the Berger case and this one. We said in the Berger case, supra, that there being no privity between Berger and Bhend (as there is no privity between the McNeils and the appellees here) that there was no question of a mutual mistake involved in that case.

In the Berger case, a Mr. Wiehl conveyed by legal description according to government survey, the northwest quarter of the northwest quarter (exactly 40 acres) to Berger, and the east half of the northwest quarter to Mr. Shepard (exactly 80 acres). The evidence however showed that they treated an irrigation ditch running north and south near the center line of the northwest quarter of the section involved as the boundary line between the east and west half of said quarter section, and it had been so considered as such for 40 years. As a matter of fact the irrigation ditch was considerably east of the actual center line thereof resulting in a loss of 4¾ acres to the east half of the northwest quarter of that section. Berger knew this but apparently Wiehl and Shepard did not. The record is silent on that point. In the instant case the west fence line was treated by all the parties after a visual inspection of the property as the western boundary line of the property purchased by the McNeils and had been so considered as such for 20 years or more. The discrepancy amounts to between one-quarter and one-half acres. However, the McNeils got a full ten acres and now seek to move the eastern boundary

line of their property 16½ feet to the east while occupying, using and claiming the west 16½ feet right up to the old fence line. This would give them 16½ feet additional frontage on their north end making a total of 346½ feet instead of 330 feet actually sold to them, while the property of the Mackeys (successors in interest to the property actually conveyed by Carney to the Attaways) would be reduced by 16½ feet frontage on the Tempe-Mesa Highway, resulting in great damage to them because of its necessity to their business. This amounts to the unjust enrichment of the McNeils and several thousand dollars damage to the Mackeys because of the location of their service station and the other improvements thereon.

In the Berger case Wiehl was the common grantor. In the instant case Carney was the common grantor. In the Berger case the ditch had been in existence and treated as the property line for 40 years. In the instant case the western fence line had been in existence and treated as the property line for at least 20 years and probably much longer. In the Berger case the 80 acres conveyed to Shepard by Wiehl and by Shepard to Bhend was enclosed by the four fences surrounding it. The buyers understood this and it was intended that the purchasers were buying the particular land within the fences. Wiehl testified he intended to sell up to and including the ditch and Berger testified he intended to buy that particular property. In the instant case Carney testified he intended to buy and to sell the property within the fences, and Mr. McNeil said he intended to buy the property shown them without any reference to the wordage in the deed of conveyance to them. In the Berger case the land was conveyed according to government survey identically as the land in the instant case was conveyed.

The McNeils come into this Court on the strength of their own title and not on the weakness of the title to the Attaways and their successors as was the case in Berger v. Bhend, supra. The evidence is clear that Mr. Carney intended to sell the particular property which the McNeils purchased and the McNeils intended to purchase the particular property which they did purchase, measured from the old fence line (the legal property line) between Carney and his predecessors and Mendoza. The attempt to distinguish this case from the Berger case cannot be sustained on the facts. If the majority opinion in this case is right—the Berger opinion was wrong. The only distinction between the two cases is that the pleadings in the Berger case had all parties before it necessary for a reformation of the deeds to speak the truth. In the instant case the proper parties were not before the court for reformation of the deeds. The unjust enrichment of the McNeils and consequent loss to the

Mackeys is unconscionable and should be redressed as hereinafter recommended.

The case of Wheeler v. Wells, 245 Ala. 336, 16 So.2d 695, 697, is similar. The factual situation to the same effect is found in Birchett v. Anderson, 160 Miss. 144, 133 So. 129, and especially, Phillips v. Cope, Mo.Sup., 111 S.W.2d 81. These cases, together with others, are cited in Berger v. Bhend.

The judgment of the trial court should be affirmed against the McNeils and in favor of the Mackeys except as to the portion thereof attempting to establish the property line between the McNeils and the Mackeys. And as to that portion it should be reversed and the cause remanded to the trial court with instruction to permit an amendment of the Mackeys' cross-complaint to include necessary parties as cross-defendants to legally reform the deeds to conform with the evidence concerning the property the McNeils intended to purchase and which they actually did purchase.

Supplemental Opinion on Rehearing

PER CURIAM.

Appellees filed a motion for rehearing— not as to the basic grounds of the decision, but attacking only this part of the directive contained in the closing paragraph, viz.: "* * * fix a reasonable sum as rental for the property encroached upon by defendants and for an attorney's fee and costs." The contention is that this directive "did not leave the question of the amount or whether attorney fees should be properly awarded to be determined by the superior court."

The pertinent statute governing this matter provides that where a disclaimer of interest or right in real property is refused prior to bringing an action to quiet title "* * * the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court." A.R.S. Section 12–1103, subd. B. In Murphey v. Gray, 84 Ariz. 299, 327 P.2d 751, 756, we held that "plainly, by the terms of this statute, attorney fees * * * are included as costs." It was not our intention in the instant case to foreclose the exercise by the trial court of a sound discretion in determining whether an attorney's fee should be allowed and if so in what amount.

The above quoted portion of the directive is changed to read:

"fix a reasonable sum as rental for the property encroached upon by defendants; exercise a sound discretion in determining whether an attorney's fee should be allowed and, if so, fix the amount thereof."

As thus modified, the original opinion is in all respects affirmed.

STRUCKMEYER, C. J., and PHELPS, UDALL, JOHNSON and BERNSTEIN, JJ., concur.